No. 13-5003

# In the U.S. Court of Appeals for the District of Columbia Circuit

AMERICAN PHYSICIANS & SURGEONS, INC. AND
ALLIANCE FOR NATURAL HEALTH USA,
*Plaintiffs-Appellants,*

vs.

KATHLEEN G. SEBELIUS, SECRETARY OF HEALTH & HUMAN SERVICES,
IN HER OFFICIAL CAPACITY, *ET AL.,*
*Defendants-Appellees.*

APPEAL FROM U.S. DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA, CIVIL CASE NO. 1:10-cv-00499-ABJ,
HON. AMY BERMAN JACKSON

**APPELLANTS' OPENING BRIEF**

LAWRENCE J. JOSEPH
(D.C. Bar No. 464777)
1250 Connecticut Ave., NW Suite 200
Washington, DC 20036
Telephone: (202) 355-9452
Facsimile: (202) 318-2254
Email: ljoseph@larryjoseph.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to FED. R. APP. P. 26.1 and Circuit Rule 26.1, counsel for appellants Association of American Physicians & Surgeons, Inc. ("AAPS") and Alliance for Natural Health-USA ("ANH-USA") presents the following certificate as to parties and *amici curiae,* rulings, and related cases.

**A.    Parties and *Amici***

The parties and *amici curiae* are as follows:

1.    AAPS and ANH-USA were the only plaintiffs before the District Court and are the only appellants in this Court;

2.    The Secretaries of the Treasury and of Health & Human Services and the Social Security Administrator in their official capacities and the United States were the only defendants in District Court and the only appellees; and

3.    No entity has appeared as an intervener or *amicus curiae.*

**B.    Rulings under Review**

AAPS and ANH-USA appeal (1) the dismissal of each count of the operative complaint by  the District Court's Memorandum Opinion and Order (docket items #59 and #58, respectively) filed October 31, 2012; (2) the transfer of the case from Judge Collyer to Judge Leon by the Order (docket item #13) filed June 11, 2010; and (3) the subsequent transfer of the case from Judge Leon to Judge Jackson by the Minute Order (no docket number) filed March 30, 2011,

which Minute Order would mooted by the reversal of the transfer from Judge

Collyer to Judge Leon (*i.e.,* if this matter were not before Judge Leon to transfer).

## C.     Related Cases

This issues presented here are related to the issues raised in *Hall v. Sebelius,*

667 F.3d 1293 (D.C. Cir. 2012), *Seven-Sky v. Holder,* 661 F.3d 1 (D.C. Cir. 2011),

and *Nat'l Fed'n of Indep. Bus. v. Sebelius,* 132 S.Ct. 2566 (2012), but this appeal

also presents additional jurisdictional and merits issues not resolved by those cases.

In *Sissel v. U.S. Dep't of Health & Human Services,* No. 1:10-cv-1263-BAH

(D.D.C.) and *Liberty Univ., Inc. v. Lew,* No. 10-2347 (4th Cir.), the plaintiffs raise

one of the merits issues – namely, whether the Patient Protection and Affordable

Care Act violated the Origination Clause of the U.S. Constitution – that AAPS and

ANH-USA ask this Court to address in this appeal.

Dated: June 21, 2013                    Respectfully submitted,


                                        /s/ Lawrence J. Joseph
                                        _____
                                        Lawrence J. Joseph, D.C. Bar #464777

                                        1250 Connecticut Ave, NW, Suite 200
                                        Washington, DC 20036
                                        Tel: 202-355-9452
                                        Fax: 202-318-2254
                                        Email: ljoseph@larryjoseph.com

                                        *Counsel for Appellants Association of*
                                        *American Physicians & Surgeons and*
                                        *Alliance for Natural Health USA*

## TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ...................................i

    A.    Parties and *Amici* ...................................................................i

    B.    Rulings under Review ......................................................i

    C.    Related Cases .............................................................. ii

Table of Contents ....................................................................... iii

Table of Authorities .................................................................vi

Glossary........................................................................................xx

Jurisdiction ..................................................................................1

Statutes and Regulations .............................................................1

Statement of Issues......................................................................1

Statement of the Case..................................................................2

    Constitutional Background ...............................................3

    PPACA's Legislative Background ....................................5

    APA's Legislative Background .........................................6

    Regulatory Background ....................................................8

    Relevant Local Rules ......................................................8

    Factual Background ..........................................................9

Standard of Review .....................................................................9

Summary of Argument...............................................................10

Argument...................................................................................12

I.    This Court Has Article III Jurisdiction on All Counts ................12

    A.    Physicians Have Standing .............................................12

        1.    Physicians Suffer Injuries in Fact ..........................13

            a.    Statutory Freedom of Choice...........................14

            b.    Competitive Injuries and Unequal Footing ..................14

            c.    Economic Injury and Regulatory Burden......................16

            d.    Equal-Protection Injury .................................17

            e.    Third-Party Standing .....................................19

            f.    Procedural Injury ..........................................21

        2.    Physicians' Injuries Fall Within the Zones of
Interests ..............................................................22

    B.    Physicians' Claims Are Ripe.........................................23

    C.    The District Court Has Statutory Subject-Matter
Jurisdiction ...................................................................25

        1.     The District Court Has Federal-Question
               Jurisdiction .................................................................25
        2.     The District Court Has Equity Jurisdiction.............26
        3.     No Tax-Related Restrictions Bar Review.................27
II.    PPACA's Penalties Are Unconstitutional .....................................28
       A.     PPACA's Mandates Violate the Commerce Power and
              All Other Enumerated Powers Except Potentially the
              Taxing Power .....................................................................28
       B.     PPACA's Tax Penalties Violate the Fifth Amendment .....................28
              1.     The Government Cannot Avoid the Constitution
                     By Indirectly Compelling What the Government
                     Lacks Authority to Require......................................30
              2.     Viewed as a Government Program, the PPACA
                     Insurance Requirements Violate the Fifth
                     Amendment ...............................................................31
       C.     PPACA's Enactment Violated the Origination Clause......................34
              1.     As a Tax Under the *NFIB* Saving Construction,
                     PPACA Raises Revenue Within the Meaning of
                     the Origination Clause .............................................35
              2.     The House Bill Was Not a Revenue-Raising Bill
                     for Purposes of the Origination Clause....................39
                     a.     Bills that Close Revenue Streams Do Not
                            "Raise" Revenue.............................................40
                     b.     SMHOTA Did Not Raise Revenue ................43
              3.     Because SMHOTA Did Not "Raise Revenue"
                     under the Origination Clause, this Court Need Not
                     Consider the *Flint* Germaneness Test......................44
III.   The PECOS Changes Are Unlawful...............................................45
       A.     Physicians Have Standing for Count IV .............................46
       B.     Count IV Is Not Moot ......................................................48
       C.     The PECOS Changes Are Substantive Rules......................49
       D.     APA's Good-Cause Exception Does Not Apply ................49
       E.     APA's "Housekeeping" Exception Does Not Apply.........50
       F.     PECOS Changes Would Be *Ultra Vires* without PPACA.................51
IV.    The POMS Changes Are Unlawful ...............................................52
       A.     This Court Has Statutory Subject-Jurisdiction for POMS
              Issues ................................................................................52

B.     This Court Reverse the POMS Merits ..................................................54

V.    The Accountings for Social Security and Medicare Are
Justiciable ........................................................................................56

VI.    This Action Should Be Remanded to Judge Collyer....................................56

A.     Nothing Requires or Commends Random Assignment ......................58

B.     This Case and *Hall* Share Common Issues of Fact ............................58

C.     This Case and *Hall* Grow Out of the Same Event or
Transaction ........................................................................................59

Conclusion ........................................................................................60

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967) ...........................................24

*Adarand Constructors, Inc., v. Pena,* 515 U.S. 200 (1995)....................................15

*Agostini v. Felton,* 521 U.S. 203 (1997) .............................................................3, 28

*Alaska Prof'l Hunters Ass'n v. FAA,*
    177 F.3d 1030 (D.C. Cir. 1999)........................................................................49

*Am. Chiropractic Ass'n v. Leavitt,*
    431 F.3d 812 (D.C. Cir. 2005).........................................................................53

*Am. Friends Serv. Comm. v. Webster,*
    720 F.2d 29 (D.C. Cir. 1983)...........................................................................22

*Am. Hosp. Ass'n v. Bowen,* 834 F.2d 1037 (D.C. Cir. 1987) ...................................51

*Am. Immigration Lawyers Ass'n v. Reno,*
    199 F.3d 1352 (D.C. 2000)......................................................................... 19-20

*Am. Mining Congress v. Mine Safety & Health Admin.,*
    995 F.2d 1106 (D.C. Cir. 1993)........................................................ 7, 49-50, 55

*Am. Trucking Ass'ns v. Dep't of Transp.,*
    166 F.3d 374 (D.C. Cir. 1999).........................................................................14

*Animal Legal Defense Fund v. Glickman,*
    154 F.3d 426 (D.C. Cir. 1998) (*en banc*) .................................................. 21-22

*Armstrong v. U.S.,* 364 U.S. 40 (1960) ...................................................................32

*Armstrong v. U.S.,* 759 F.2d 1378 (9th Cir. 1985) ............................................ 39-41

*Ass'n of Am. Physicians & Surgeons v. Weinberger,*
    395 F.Supp. 125 (N.D. Ill.), *aff'd* 423 U.S. 975 (1975) .................................47

*Ass'n of Data Processing Serv. Org., Inc. v. Camp,*
    397 U.S. 150 (1970) ........................................................................................12

*AT&T Corp. v. FCC,* 349 F.3d 692 (D.C. Cir. 2003) .............................................24

*Avocados Plus Inc. v. Veneman,*
    370 F.3d 1243 (D.C. Cir. 2004)........................................................................54

*Baker v. Gen'l Motors Corp.,* 522 U.S. 222 (1998) ..................................................3

\*  *Baral v. U.S.,* 528 U.S. 431 (2000) .......................................................................44

*Barr v. Clinton,* 370 F.3d 1196 (D.C. Cir. 2004) ....................................9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).................................10

*Bertelsen v. White,* 65 F.2d 719 (1st Cir. 1933)...................................40

*Better Government Ass'n v. Department of State,*
    780 F.2d 86 (D.C. Cir 1986)..........................................................59

*Bolling v. Sharpe,* 347 U.S. 497 (1954)..................................................5

*Bristol-Myers Squibb Co. v. Shalala,*
    91 F.3d 1493 (D.C. Cir. 1996)................................................ 14-15

\*    *Brown v. Legal Found.,* 538 U.S. 216 (2003)........................................33

*Brushaber v. Union Pac. R. Co.,* 240 U.S. 1 (1916)..............................29

*Buckley v. Valeo,* 424 U.S. 1 (1976) ........................................................5

*Califano v. Sanders,* 430 U.S. 99 (1977) ........................................ 25-26

*Caplin & Drysdale v. U.S.,* 491 U.S. 617 (1989)...................................19

*Carey v. Population Serv., Int'l,* 431 U.S. 678 (1977) ..........................26

*Catholic Social Service v. Shalala,*
    12 F.3d 1123 (D.C. Cir. 1994)......................................................10

*Chamber of Commerce of U.S. v. DOL,*
    174 F.3d 206 (D.C. Cir. 1999).......................................................50

*Chamber of Commerce of U.S. v. S.E.C.,*
    443 F.3d 890 (D.C. Cir. 2006).......................................................50

*Charles C. Steward Mach. Co. v. Davis,* 301 U.S. 548 (1937) ..............17

*Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,*
    470 U.S. 116 (1985) .....................................................................48

*Chiles v. Thornburgh,* 865 F.2d 1197 (11th Cir. 1989).........................23

*Chrysler Corp. v. Brown,* 441 U.S. 281 (1979)........................................7

*Ciba-Geigy Corp. v. EPA,* 801 F.2d 430 (D.C. Cir. 1986)....................24

*City of Boerne v. Flores,* 521 U.S. 507 (1997) ......................................35

*City of Waukesha v. EPA,* 320 F.3d 228 (D.C. Cir. 2003) ...............10, 46

*Clinton v. New York,* 524 U.S. 417 (1998) ............................................15

*Collins v. Pension Benefit Guaranty Corp.,*
    126 F.R.D. 3 (D.D.C. 1989) ....................................................9, 60

*Colorado Springs Prod. Credit Ass'n v. Farm Credit Admin.,*
    967 F.2d 648 (D.C. Cir. 1992).........................................................30

*Columbia Broadcasting System, Inc. v. U.S.,*
    316 U.S. 407 (1942) ...................................................................17

*Cooper Indus., Inc. v. Aviall Serv., Inc.,*
    543 U.S. 157 (2004) ...............................................................3, 53

*Craig v. Boren,* 429 U.S. 190 (1976)...............................................20

*CSX Transp., Inc. v. Alabama Dep't of Revenue,*
    131 S. Ct. 1101 (2011) ...............................................................18

*DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332 (2006)......................... 13-14

*Dart v. U.S.,* 848 F.2d 217 (D.C. Cir. 1988)......................................21

*Dep't of Commerce v. U.S. House of Representatives,*
    525 U.S. 316 (1999) ............................................................. 9-10

*Diamond v. Charles,* 476 U.S. 54 (1986) ...................................... 15-16

*DKT Memorial Fund Ltd. v. A.I.D.,*
    887 F.2d 275 (D.C. Cir. 1989)......................................................24

*DSE, Inc. v. U.S.,* 169 F.3d 21 (D.C. Cir 1999).................................58

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.,*
    438 U.S. 59 (1978) .....................................................................14

*Eastern Enterprises v. Apfel,* 524 U.S. 498 (1998) ............................32

*El Paso Natural Gas Co. v. FERC,*
    50 F.3d 23 (D.C. Cir. 1995)..........................................................15

*Electronic Privacy Info. Ctr v. U.S. Dep't of Homeland Sec.,*
    653 F.3d 1 (D.C. Cir. 2011)..........................................................51

*FAIC Securities, Inc. v. U.S.,* 768 F.2d 352 (D.C. Cir. 1985) ...........17, 20

*FDIC v. Bender,* 127 F.3d 58 (D.C. Cir. 1997) .................................57

*FEC v. Akins,* 524 U.S. 11 (1998).........................................13, 21, 56

*First Nat'l Bank & Trust Co. v. Nat'l Credit Union Admin.,*
    988 F.2d 1272 (D.C. Cir. 1993).....................................................23

*Flint v. Stone Tracy Co.,* 220 U.S. 107 (1911), *abrogated in part*
    *on other grounds, Garcia v. San Antonio Metro. Transit Auth.,*
    469 U.S. 528 (1985) ............................................................ 40, 44-45

*Florida Audubon Soc'y v. Bentsen,*
    94 F.3d 658 (D.C. Cir. 1996) (*en banc*) .................................................... 21-22

*Florida ex rel. Atty. Gen. v. U.S. Dept. of Health &*
    *Human Serv.,* 648 F.3d 1235 (11th Cir. 2011) .................................................28

*Florida Power & Light Co. v. E.P.A.,*
    145 F.3d 1414 (D.C. Cir. 1998)........................................................................25

*Francolino v. Kuhlman,* 365 F.3d 137 (2d Cir. 2004) ...........................................58

*Fraternal Order of Police v. U.S.,*
    152 F.3d 998 (D.C. Cir. 1998).........................................................................19

*Frost v. R.R. Comm'n of State of California,*
    271 U.S. 583 (1926) ........................................................................................31

*Ganem v. Heckler,* 746 F.2d 844 (D.C. Cir. 1984)..........................................26, 53

*Gen. Elec. Co. v. Joiner,* 522 U.S. 136 (1997) ........................................................59

*General Elec. Co. v. E.P.A.,*
    290 F.3d 377 (D.C. Cir. 2002).....................................................................7, 49

*Haitian Refugee Ctr. v. Gracey,*
    809 F.2d 794 (D.C. Cir. 1987)...................................................................17, 23

*Hall v. Sebelius,* 667 F.3d 1293 (D.C. Cir. 2012)............................. 1, 12, 52, 56-60

*Harman v. Forssenius,* 380 U.S. 528 (1965) ..................................................... 30-31

*Haskin v. Secretary of the Dep't of Health & Human Serv.,*
    565 F.Supp. 984 (E.D.N.Y. 1983)...................................................................37

*Hebard v. Dillon,* 699 So.2d 497 (La. App. 1997) .................................................19

*Heckler v. Mathews,* 465 U.S. 728 (1984)..............................................................18

*Heitman v. U.S.,* 753 F.2d 33 (6th Cir. 1984) ........................................................40

*Hendler v. U.S.,* 175 F.3d 1374 (Fed. Cir. 1999)...................................................10

\* *Hollingsworth v. Perry,* 558 U.S. 183 (2010)................................................... 57-58

*Honeywell Int'l, Inc. v. EPA,* 374 F.3d 1363
    (D.C. Cir. 2004), *withdrawn in part on other grounds,*
    393 F.3d 1315 (D.C. Cir. 2005)......................................................................23

*Hubbard v. Lowe,* 226 F. 135 (S.D.N.Y. 1915),
    *appeal dismissed* 242 U.S. 654 (1916)...........................................................44

*Hunt v. Washington State Apple Adver. Comm'n,*
  432 U.S. 333 (1977) .........................................................................13

*I.N.S. v. Nat'l Ctr. for Immigrants' Rights,*
  502 U.S. 183 (1991) ................................................................ 28-29

*In re Ocwen Loan Serv., LLC Mortg. Servicing Litig.,*
  491 F.3d 638 (7th Cir. 2007) .........................................................59

*Indep. Bankers Ass'n of Am. v. Heimann,*
  613 F.2d 1164 (D.C. Cir. 1979)......................................................16

*Int'l Union v. Brock,* 477 U.S. 274 (1986) ......................................16

*Irizarry v. U.S.,* 553 U.S. 708 (2008)...............................................59

*James Madison Ltd. v. Ludwig,*
  82 F.3d 1085 (D.C. Cir. 1996)........................................................57

*Jitney Bus Ass'n v. City of Wilkes-Barre,*
  256 Pa. 462, 100 A. 954 (Pa. 1917) ...............................................19

*Kelo v. City of New London,* 545 U.S. 469 (2005) .................................32

*Kendall v. U.S. ex rel. Stokes,*
  37 U.S. (12 Pet.) 524 (1838).........................................................26

*Liquid Carbonic Indus. Corp. v. FERC,*
  29 F.3d 697 (D.C. Cir. 1994).........................................................15

*Loretto v. Teleprompter Manhattan CATV Corp.,*
  458 U.S. 419 (1982) ......................................................................31

*Los Angeles v. Lyons,* 461 U.S. 95 (1983).............................................13

*Louisiana Pub. Serv. Comm'n v. FCC,*
  476 U.S. 355 (1986) .........................................................................7

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ....................................................10, 13, 22, 27

*Mack Trucks, Inc. v. E.P.A.,*
  682 F.3d 87 (D.C. Cir. 2012)..........................................................50

*Marbury v. Madison,*
  5 U.S. (1 Cranch) 137 (1803) ...........................................................3

*Marsh v. Oregon Natural Resources Council,*
  490 U.S. 360 (1989) ......................................................................59

*Marshall County Health Care Auth. v. Shalala,*
    988 F.2d 1221 (D.C. Cir. 1993)......................................................8

*McCarthy v. Madigan,* 503 U.S. 140 (1992) ...........................................54

*McCoy v. Union Elevated R. Co.,*
    247 U.S. 354 (1918) ................................................................10

*Millard v. Roberts,* 202 U.S. 429 (1906) ...........................................37, 39

*Missouri P. R. Co. v. Nebraska,* 217 U.S. 196 (1910)...............................33

*Moore v. Charlotte-Mecklenburg Bd. of Educ.,*
    402 U.S. 47 (1971) ................................................................55

*Moore v. U.S. House of Representatives,* 733 F.2d 946
    (D.C. Cir. 1984), *abrogated in part on other grounds,*
    *Raines v. Byrd,* 521 U.S. 811 (1997) ..............................................45

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
    551 U.S. 644 (2007) ................................................................27

*Nat'l Cottonseed Prod. Ass'n v. Brock,*
    825 F.2d 482 (D.C. Cir. 1987)......................................................19

*Nat'l Credit Union Admin. v. First Nat'l Bank & Trust, Co.,*
    522 U.S. 479 (1998) ................................................................22

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
    132 S.Ct. 2566 (2012) ...........................2-3, 10-11, 27-29, 35-38, 40

*Nat'l Treasury Employees Union v. U.S.,*
    101 F.3d 1423 (D.C. Cir. 1996)......................................................22

*Nat'l Welfare Rights Org'n v. Mathews,*
    533 F.2d 637 (D.C. Cir. 1976)......................................................45

*Nordlinger v. Hahn,* 505 U.S. 1 (1992) ...............................................10

*Northern Arapahoe Tribe v. Hodel,*
    808 F.2d 741 (10th Cir. 1987)......................................................50

*Oceanair of Florida, Inc. v. N.T.S.B.,*
    888 F.2d 767 (11th Cir. 1989)........................................................7

*Ohio Forestry Ass'n, Inc., v. Sierra Club,*
    523 U.S. 726 (1998) ................................................................25

*Pacific Gas & Electric Co. v. Hay,*
    68 Cal.App.3d 905 (Cal. App. 1977) ..............................................33

*Paralyzed Veterans of Am. v. D.C. Arena L.P.,*
  117 F.3d 579 (D.C. Cir. 1997) ........................................................49

*Pennell v. San Jose,* 485 U.S. 1 (1988) .............................................33

*Pennsylvania v. New Jersey,* 426 U.S. 660 (1976) ..........................17

*People v. Kastings,* 307 Ill. 92, 138 N.E. 269 (Ill. 1923) ...............19

*Peoples v. Dep't of Agriculture,*
  427 F.2d 561 (D.C. Cir. 1970) ........................................................26

*Petro-Chem Processing, Inc. v. EPA,*
  866 F.2d 433 (D.C. Cir. 1989) ........................................................17

*Pub. Citizen v. FTC,*
  869 F.2d 1541 (D.C. Cir. 1989) ......................................................13

*Public Service Elec. & Gas Co. v. F.E.R.C.,*
  485 F.3d 1164 (D.C. Cir. 2007) ......................................................25

*R.R. Retirement Bd. v. Alton R.R. Co.,*
  295 U.S. 330 (1935) ........................................................................33

*Rosenberger v. Rector & Visitors of the Univ. of Va.,*
  515 U.S. 819 (1995) ........................................................................42

*Rowe v. U.S.,* 583 F. Supp. 1516 (D. Del.),
  *aff'd mem.* 749 F.2d 27 (3d Cir. 1984) ...........................................40

*Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.,*
  547 U.S. 47 (2006) ..........................................................................47

*Rust v. Sullivan,* 500 U.S. 173 (1991) ..............................................31

*S. Cent. Bell Tel. Co. v. Alabama,* 526 U.S. 160 (1999) ....................3

*Sabre, Inc. v. DOT,* 429 F.3d 1113 (D.C. Cir. 2005) .......................25

*Scheduled Airlines Traffic Offices, Inc. v. D.O.D.,*
  87 F.3d 1356 (D.C. Cir. 1996) ........................................................23

*Schlesinger v. Councilman,* 420 U.S. 738 (1975) .............................27

*Shalala v. Illinois Council on Long Term Care,*
  529 U.S. 1 (2000) ............................................................................53

*Smoke v. Norton,* 252 F.3d 468 (D.C. Cir. 2001) .............................58

*Sorrell v. IMS Health Inc.,* 131 S.Ct. 2653 (2011) ..........................29

*Sperry Corp. v. U.S.,* 12 Cl. Ct. 736 (1987),
  *rev'd on other grounds,* 853 F.2d 904 (Fed. Cir. 1988)...................................39

*Sperry Corp. v. U.S.,* 925 F.2d 399 (Fed. Cir. 1991)................................................40

*Stark v. Wickard,* 321 U.S. 288 (1944) ....................................................................26

*State of N.J., Dep't of Envtl. Prot. v. U.S. E.P.A.,*
  626 F.2d 1038 (D.C. Cir. 1980)..........................................................................49

*Stephenson v. Cox,* 223 F. Supp. 2d 119 (D.D.C. 2002) ........................................57

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.,*
  130 S. Ct. 1758 (2010) .......................................................................................24

*Sugar Cane Growers Co-op. of Florida v. Veneman,*
  289 F.3d 89 (D.C. Cir. 2002)......................................................................16, 21

*Syncor Int'l Corp. v. Shalala,*
  127 F.3d 90 (D.C. Cir. 1997)...............................................................................7

*Twin City Bank v. Nebeker,* 167 U.S. 196 (1897).................................... 35-38, 43

*U.S. v. Bass,* 404 U.S. 336 (1971).............................................................................48

*U.S. v. Herrada,* 887 F.2d 524 (5th Cir. 1989) .......................................................43

*U.S. v. Mead Corp.,* 533 U.S. 218 (2001)................................................................35

* *U.S. v. Munoz-Flores,* 495 U.S. 385 (1990) .........................34-35, 37=38, 40

*U.S. v. Norton,* 91 U.S. 566 (1875)...........................................................................42

*U.S. v. Picciotto,* 875 F.2d 345 (D.C. Cir. 1989)...................................................51

*U.S. v. Simmons,* 476 F.2d 33 (9th Cir. 1973) ........................................................58

*U.S. v. United Mine Workers of America,*
  330 U.S. 258 (1947) ...........................................................................................58

*United Transp. Union v. I.C.C.,*
  891 F.2d 908 (D.C. Cir. 1989)...........................................................................16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
  429 U.S. 252 (1977) ...........................................................................................16

* *Vill. of Norwood v. Baker,* 172 U.S. 269 (1898)...............................................30

*Wachtel v. O.T.S.,* 982 F.2d 581 (D.C. Cir. 1993)..................................................35

*Wardell v. U.S.,* 757 F.2d 203 (8th Cir. 1985).......................................................40

*Warth v. Seldin,* 422 U.S. 490 (1975)................................................................ 13-14

*Waters v. Churchill,* 511 U.S. 661 (1994) ...........................................................3, 53

*Wyeth v. Levine,* 555 U.S. 555 (2009) ...................................................48

## STATUTES

U.S. CONST. art. I, §1 ...................................................................4

U.S. CONST. art. I, §1, cl. 1 ...........................................................6

\* U.S. CONST. art. 1, §7, cl. 1 ..........................2, 4, 11, 28, 34-45, 49

U.S. CONST. art. I, §8 .................................................................4, 36

U.S. CONST. art. I, §8, cl. 1 ........................................11, 17, 47, 54

U.S. CONST. art. I, §9 ...................................................................4

U.S. CONST. art. III.............................................................12, 15, 25

U.S. CONST. art. III, §2 ..............................................................24

U.S. CONST. art. VI, cl. 2 ...........................................................14

\* U.S. CONST. amend. V ......................................2, 4-5, 10, 18, 28- 33, 58

U.S. CONST. amend. IX .................................................................4

U.S. CONST. amend. XIV, §1, cl. 4 ...............................................5

U.S. CONST. amend. XVI ..........................................................4, 36

2 U.S.C. §639(c)(2)....................................................................42

2 U.S.C. §639(c)(3)....................................................................42

Administrative Procedure Act,
      5 U.S.C. §§551-706 ..........................2, 6-7, 11, 26-27, 45-46, 48-50, 54, 59

5 U.S.C. §551(5) .........................................................................54

5 U.S.C. §553..........................................................................21, 49

5 U.S.C. §553(a)(2)....................................................................45

5 U.S.C. §553(b)(A)..................................................................7, 50

5 U.S.C. §553(b)(B) ............................................................6, 49-50

5 U.S.C. §553(b)........................................................................6

5 U.S.C. §553(c) .........................................................................6

5 U.S.C. §702...............................................................................3

5 U.S.C. §706...............................................................................7

26 U.S.C. §36(a) ..................................................................43

26 U.S.C. §36(f) ..................................................................43

26 U.S.C. §132 ....................................................................43

26 U.S.C. §4980H ..................................................................5

26 U.S.C. §4980H(a)(1) ...........................................................36

26 U.S.C. §5000A ............................................................5, 37-40

26 U.S.C. §5000A(e)(1)(B)(ii) ....................................................36

26 U.S.C. §5000A(f)(1)(C) ........................................................36

26 U.S.C. §5000A(f)(2) ...........................................................36

26 U.S.C. §5000A(f)(2)(A) ........................................................36

26 U.S.C. §5000A(f)(2)(B) ........................................................36

26 U.S.C. §7421(a) ...............................................................27

28 U.S.C. §1291 ...................................................................1

28 U.S.C. §1331 ...................................................1, 26-27, 52-53

28 U.S.C. §1346 ..................................................................52

28 U.S.C. §2106 ..................................................................57

28 U.S.C. §2201(a) ...............................................................27

29 U.S.C. §1002(32) ..............................................................36

42 U.S.C. §300gg ...................................................................6

42 U.S.C. §300gg-1 .................................................................6

42 U.S.C. §300gg-2 .................................................................6

42 U.S.C. §300gg-3 .................................................................6

42 U.S.C. §300gg-4 .................................................................6

42 U.S.C. §300gg-11(a) .............................................................6

42 U.S.C. §300gg-14(a) .............................................................6

42 U.S.C. §300gg-91(d)(8) .........................................................36

42 U.S.C. §402(n) .................................................................55

42 U.S.C. §402(t) .................................................................55

42 U.S.C. §402(u) .................................................................55

42 U.S.C. §402(v) ................................................................................55

42 U.S.C. §402(x) ................................................................................55

42 U.S.C. §402(y) ................................................................................55

42 U.S.C. §405 ................................................................................52-53

42 U.S.C. §405(g) .................................................................. 1, 11, 52-53

42 U.S.C. §405(h) .................................................................. 1, 11, 52-53

42 U.S.C. §1320a-7k(e) ..........................................................................6

Medicare Act,
  42 U.S.C. §§1395-1395kkk-l ...................... 6, 11-12, 21, 46-48, 51, 53-56

42 U.S.C. §1395a(b) ..............................................................11, 46-48, 50-51

Medicare Part A,
  42 U.S.C. §§1395c-1395i-5 ......................................... 2, 11-12, 55

42 U.S.C. §1395ii .................................................................. 1, 11, 52-53

Act of February 27, 1801, 2 Stat. 103 ...................................................26

Act of March 3, 1863, 12 Stat. 762 .................................................. 26-27

Act of June 25, 1936, 49 Stat. 1921 ......................................................27

District of Columbia Court Reorganization Act,
  Pub. L. No. 91-358, 84 Stat. 605 (1970) ...........................................27

Tax Equity & Fiscal Responsibility Act of 1982,
  Pub. L. No. 97-248, 96 Stat. 324 (1982) ...................................... 39-41

Patient Protection and Affordable Care Act, Pub. L. No. 111-148,
  124 Stat. 119 (2010) .........................1-6, 10-20, 27-39, 44-45, 48-53, 56, 60

Patient Protection and Affordable Care Act,
  Pub. L. No. 111-148, §6405, 124 Stat. 119, 768-69 (2010) ...........................6

Patient Protection and Affordable Care Act,
  Pub. L. No. 111-148, §6405(c), 124 Stat. 119, 768-69 (2010) .............. 51-52

Patient Protection and Affordable Care Act,
  Pub. L. No. 111-148, §9003, 124 Stat. 119, 854 (2010) .............................6

Corporate Estimated Tax Shift Act of 2009, Pub. L. 111-42,
  tit. II, §202(b), 123 Stat. 1963, 1964 (2009)...................................44

CAL. VEH. CODE §16053 ...................................................................18

D.C. CODE §11-501 ..........................................................................26

LA. REV. STAT. ANN. §32:104 ...........................................................18

OHIO REV. CODE ANN. §4509.45 ......................................................18

OKLA. CONST. art. II, §37(B)(1) .......................................................14

D.C. CODE §11-521 (1967) ...............................................................26

## LEGISLATIVE HISTORY

5 J. Elliot, DEBATES ON THE ADOPTION OF THE
    FEDERAL CONSTITUTION (1881) ..................................................34

\* S. REP. NO. 42-146 (1872) ............................................................ 41-42

44 Cong. Rec. 4420 (1909) ...............................................................37

H.R. REP. NO. 94-1656, *reprinted in* 1976 U.S.C.C.A.N. 6121 .............................27

Service Members Home Ownership Tax Act of 2009, §1, H.R. 3590,
    111th Cong., 1st Sess. (Oct. 8, 2009) ................................ 34, 39-45

Service Members Home Ownership Tax Act of 2009, §1, H.R. 3590,
    111th Cong., 1st Sess. (Oct. 8, 2009) ..............................................43

Service Members Home Ownership Tax Act of 2009, §2, H.R. 3590,
    111th Cong., 1st Sess. (Oct. 8, 2009) ..............................................43

Service Members Home Ownership Tax Act of 2009, §3, H.R. 3590,
    111th Cong., 1st Sess. (Oct. 8, 2009) ..............................................43

Service Members Home Ownership Tax Act of 2009, §4, H.R. 3590,
    111th Cong., 1st Sess. (Oct. 8, 2009) ..............................................43

Service Members Home Ownership Tax Act of 2009, §5, H.R. 3590,
    111th Cong., 1st Sess. (Oct. 8, 2009) .......................................... 43-44

Service Members Home Ownership Tax Act of 2009, §6, H.R. 3590,
    111th Cong., 1st Sess. (Oct. 8, 2009) ..............................................44

## REGULATIONS AND RULES

FED. R. CIV. P. 8(a)(2) ......................................................................10

FED. R. CIV. P. 12(b) ..........................................................................9

FED. R. CIV. P. 12(b)(1) ....................................................................10

FED. R. CIV. P. 12(b)(6) ....................................................................10

FED. R. CIV. P. 18(a) .........................................................................60

FED. R. CIV. P. 25(d) .........................................................................58

D.D.C. LCvR 40.3(a) .................................................................9, 58

D.D.C. LCvR 40.5 .................................................................9, 58, 60

D.D.C. LCvR 40.5(a)(3) ..........................................................9, 60

\*   D.D.C. LCvR 40.5(a)(3)(ii) ................................................. 9, 56-57

\*   D.D.C. LCvR 40.5(a)(3)(iii) ................................................ 9, 56-57

D.D.C. LCvR 40.5(a)(4) ..........................................................9, 60

D.D.C. LCvR 40.5(b)(2) ...............................................................9

D.D.C. LCvR 40.5(b)(2) ...............................................................9

D.D.C. LCvR 40.5(c)(1) ...............................................................9

D.D.C. LCrR 32.2(d) ..................................................................59

75 Fed. Reg. 24,437 (2010) ............................................8, 46-47, 49-50

Center for Medicare and Medicaid Services ("CMS")
Manual System's Charge Request 6417....................8, 46-47, 49-50

Center for Medicare and Medicaid Services ("CMS")
Manual System's Charge Request 6421 ..................8, 46-47, 49-50

Social Security Program Operations Manual System,
Withdrawal Considerations When Hospital Insurance
is Involved, POMS GN 00206.020.............................8, 11

Social Security Program Operations Manual System,
Waiver of Hospital Insurance Entitlement by Monthly
Beneficiary, POMS HI 00801.002 ...........................8, 11

Social Security Program Operations Manual System,
Withdrawal Considerations, POMS HI 00801.034 ...................8, 11

## **OTHER AUTHORITIES**

VI CANNON'S PRECEDENTS OF HOUSE OF REPRESENTATIVES OF
THE UNITED STATES §316 (1935)..................................................38

VI CANNON'S PRECEDENTS OF HOUSE OF REPRESENTATIVES OF
THE UNITED STATES §317 (1935)..................................................35

2 HINDS' PRECEDENTS OF THE HOUSE OF REPRESENTATIVES OF
THE UNITED STATES §1489 (1907) ........................................39, 41

Louis L. Jaffee, *The Right to Judicial Review I,*
71 HARV. L. REV. 401 (1958) .........................................................3

Thomas L. Jipping, *TEFRA and the Origination Clause: Taking
     the Oath Seriously,* 35 BUFF. L. REV. 633 (1986) ........................................39

Henry P. Monaghan, Third Party Standing,
     84 COLUM. L. REV. 277 (1984)......................................................................17

Eduardo Moisés Peñalver, *Regulatory Takings,*
     104 COLUM. L. REV. 2182 (2004).............................................................. 29-30

James Saturno, Section Research Manager, Congressional Research Serv.,
     *The Origination Clause of the U.S. Constitution: Interpretation and
     Enforcement* (Mar. 15, 2011) ......................................................................39

J. Story, COMMENTARIES ON THE CONSTITUTION §880 (3d ed. 1858) .............. 35-36

6A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE Civ.
     §1529 (2d ed. 1990 & Supp. 2013) ..............................................................59

## <u>GLOSSARY</u>

| | |
|---|---|
| AAPS | Association of American Physicians & Surgeons |
| *AILA* | *Am. Immigration Lawyers Ass'n v. Reno,* 199 F.3d 1352, 1361-62 (D.C. 2000) |
| *ALDF* | *Animal Legal Defense Fund v. Glickman,* 154 F.3d 426, 444 (D.C. Cir. 1998) (*en banc*) |
| *AMC* | *Am. Mining Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106 (D.C. Cir. 1993) |
| APA | Administrative Procedure Act, 5 U.S.C. §§551-706 |
| CMS | Center for Medicare and Medicaid Services |
| CR6417/6421 | Change Requests 6417 and 6421 |
| *FAIR* | *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.,* 547 U.S. 47 (2006) |
| HHS | Department of Health & Human Services |
| IFC | Interim Final Rule with Comment Period |
| JA | Joint Appendix |
| *NFIB* | *Nat'l Fed'n of Indep. Bus. v. Sebelius,* 132 S.Ct. 2566 (2012) |
| NPI | National Provider Identifier |
| PECOS | Provider Enrollment, Chain and Ownership System |
| POMS | Social Security Program Operations Manual System |
| PPACA | Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) |
| SMHOTA | Service Members Home Ownership Tax Act of 2009, H.R. 3590, 111th Cong., 1st Sess. (Oct. 8, 2009) |
| TEFRA | Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 (1982) |

## JURISDICTION

On October 31, 2012, pursuant to Rules 12(b)(1) and (b)(6), the District Court (JA __-__) dismissed this action by the Association of American Physicians & Surgeons, Inc. ("AAPS") and the Alliance for Natural Health-USA (collectively, with AAPS, "Plaintiffs"). The District Court had federal-question jurisdiction under 28 U.S.C. §1331 and its own equity jurisdiction. Plaintiffs noticed this appeal on December 28, 2012 (JA __). Under 28 U.S.C. §1291, this Court has jurisdiction over the District Court's opinion and order dismissing the litigation and this litigation's transfer between judges.

## STATUTES AND REGULATIONS

Appellants' Addendum contains the pertinent statutes and regulations.

## STATEMENT OF ISSUES

This appeal raises the following issues for review:

1.      Whether Plaintiffs have standing for each count of their complaint?

2.      Whether 42 U.S.C. §§405(g)-(h), 1395ii displaced the District Court's jurisdiction for Count I?

3.      Whether the District Court's alternate holding based on *Hall v. Sebelius,* 667 F.3d 1293 (D.C. Cir. 2012), should stand, notwithstanding merits arguments that *Hall* did not resolve?

4.      Whether the Patient Protection and Affordable Care Act ("PPACA"), as construed by the Supreme Court in *Nat'l Fed'n of Indep. Bus. v. Sebelius,* 132

S.Ct. 2566 (2012) ("*NFIB*"), violated the Origination Clause?

      5.     Whether PPACA's "tax penalties" violate the Fifth Amendment?

      6.     Whether the Department of Health & Human Services ("HHS") violated the Administrative Procedure Act ("APA") in several agency actions requiring enrollment in the Provider Enrollment, Chain and Ownership System ("PECOS") and in requiring providers to obtain a National Provider Identifier ("NPI") absent another NPI-triggering event?

      7.     Whether claims for an accounting of the Medicare and Social Security trust funds are justiciable?

      8.     Whether, in the event of a remand, this action should be remanded to Judge Collyer or Judge Jackson?

## STATEMENT OF THE CASE

Plaintiffs challenge several interrelated actions by defendants-appellees Kathleen Sebelius, the HHS Secretary, the Treasury Secretary, and the Social Security Administrator, and the United States (collectively, the "Administration") in the fields of medicine and health insurance:

- Count I seeks to invalidate on procedural and substantive grounds several amendments to the Social Security Program Operations Manual System ("POMS") that require returning past Social Security benefits to opt out of Medicare Part A.

- Counts II-III seek to invalidate the individual- and employer-based penalties, which *NFIB* held (with respect to individuals) could qualify as taxes even though outside the Commerce Power.[1]

- Count IV seeks to invalidate agency actions that require enrolling in PECOS to refer patients for Medicare services and that require using an NPI.

- Counts V-VI seek accountings of the Medicare and Social Security trust funds based on PPACA's impairment of those programs.

The following sections outline the relevant legal and factual background.

**Constitutional Background**

Under the federal Constitution, defendant United States is a sovereign of limited powers, and – to its credit – it has consented to suit in federal court. 5 U.S.C. §702. Long before the 1976 statute granting that consent, however, our legal tradition allowed suit to compel government officers to comply with the laws and Constitution. Louis L. Jaffee, *The Right to Judicial Review I,* 71 HARV. L. REV. 401, 433 (1958); *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 165 (1803). Thus,

---

[1]    Although *NFIB* binds this Court, *Agostini v. Felton,* 521 U.S. 203, 237 (1997), three points bear emphasis: (1) issue preclusion cannot bind on those who did not participate in the prior litigation, *Baker v. Gen'l Motors Corp.,* 522 U.S. 222, 237-38 & n.11 (1998); (2) *stare decisis* does not extend to issues that were not conclusively settled, *Cooper Indus., Inc. v. Aviall Serv., Inc.,* 543 U.S. 157, 170 (2004); *Waters v. Churchill,* 511 U.S. 661, 678 (1994); and (3) *stare decisis* should not – and lawfully cannot – apply so conclusively that it violates due process, *S. Cent. Bell Tel. Co. v. Alabama,* 526 U.S. 160, 167-68 (1999).

notwithstanding defendant United States' sovereignty, Plaintiffs can enforce the sovereign rights retained to the People and the States. U.S. CONST. amend. IX.

Under U.S. CONST. art. I, §8, Congress has the authority "to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the … general welfare," provided that "all duties, imposts and excises shall be uniform throughout the United States." That section also authorizes Congress to "regulate commerce … among the several states" and "[t]o make all laws which shall be necessary and proper for carrying into execution the foregoing powers." *Id.* Under the Origination Clause, "[a]ll Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. CONST. art. I, §1, cl. 1.

Under the federal Taxing Power, direct taxes "shall be apportioned among the several states … according to their respective numbers," except that Congress may "lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration." U.S. CONST. art. I, §2; *id.,* amend. XVI. Further, "[n]o capitation, or other direct, tax shall be laid, unless in proportion to the census or enumeration herein before directed to be taken." *Id.* art. I, §9.

The Fifth Amendment requires due process and prohibits the taking of private property for public use without just compensation. U.S. CONST. amend. V.

In addition, the Fifth Amendment includes an equal-protection component against federal discrimination that parallels the Equal Protection Clause of the Fourteenth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 499 (1954); *Buckley v. Valeo,* 424 U.S. 1, 93 (1976).

**PPACA's Legislative Background**

PPACA represents a massive expansion of the federal role in healthcare and health insurance, passed on party-line votes and unusually explicit state-by-state deal-making in the Senate to secure the last votes for cloture and thereby avoid a filibuster. In opposing the Administration's motion to dismiss, Plaintiffs focused on only a few PPACA provisions:

- PPACA §1501 requires individuals to obtain PPACA-compliant health insurance or pay a penalty, 26 U.S.C. §5000A;

- PPACA §1513 requires employers with fifty or more "fulltime" (as defined) employees to provide PPACA-compliant health insurance or pay a penalty, 26 U.S.C. §4980H;

- PPACA's insurance reforms elevate insurance costs by prohibiting the exclusion of those with pre-existing conditions, prohibiting insurers from setting lifetime limits, requiring insurers to cover preventive health services and to allow children to remain on their parents' plans through age 26, and

5

restricting insurers' use of annual limits on coverage, 42 U.S.C. §§300gg-300gg-4, 300gg-11(a), 300gg-14(a);

- PPACA §6402 and §6405 amended Medicare to require that providers include NPIs and to authorize HHS to require referrers to include NPIs on Medicare orders, 42 U.S.C. §1320a-7k(e); 124 Stat. at 768-69;

- PPACA §9003 excludes drugs not prescribed by a physician from reimbursement through health savings accounts and flexible spending accounts, effective January 1, 2011, 124 Stat. at 854.

In addition, Plaintiffs also rely on PPACA's *not containing* a severability clause, signaling congressional intent to have the entire PPACA rendered invalid if courts invalidate its key provisions.

**APA's Legislative Background**

Although the Constitution vests "[a]ll legislative Powers" in Congress, U.S. CONST. art. I, §1, the APA delegates rulemaking authority to federal agencies, 5 U.S.C. §§551-706. Under APA's familiar provisions for notice-and-comment rulemaking, agencies generally must propose so-called legislative rules in the *Federal Register* and accept comments and respond to them in the final rule, 5 U.S.C. §553(b)-(c), subject to a good-cause exception, 5 U.S.C. §553(b)(B). Notice-and-comment requirements do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5

6

U.S.C. §553(b)(A).

Notice-and-comment procedures serve the important goal of "protect[ing] the [public] from arbitrary action on the part of [agencies], however unintended." *Oceanair of Florida, Inc. v. N.T.S.B.,* 888 F.2d 767, 770 (11th Cir. 1989). The right to comment enables the public to convince agencies to change an unwise ("arbitrary or capricious") or unlawful ("not in accordance with the law") course. 5 U.S.C. §706.

This Circuit recognizes four general criteria that trigger the notice-and-comment procedure: (1) whether the rules provide adequate legislative authority, absent the rule, for the same result; (2) whether the agency promulgated the rule into the C.F.R.; (3) whether the agency invoked its general legislative authority; and (4) whether the rule effectively amends prior legislative rules. *Am. Mining Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106, 1112 (D.C. Cir. 1993) ("*AMC*"). Similarly, purported "guidance" that narrows an agency's discretion also requires notice-and-comment procedures. *General Elec. Co. v. E.P.A.,* 290 F.3d 377, 383-84 (D.C. Cir. 2002). Where the APA requires notice-and-comment procedures, failure to follow those procedures renders the resulting agency action both void *ab initio* and unconstitutional. *Chrysler Corp. v. Brown,* 441 U.S. 281, 303 (1979); *Syncor Int'l Corp. v. Shalala,* 127 F.3d 90, 94-95 (D.C. Cir. 1997); *cf. Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374 (1986).

**Regulatory Background**

The promulgations associated with Counts I and IV provide the entire regulatory background for those counts because the Administration issued them without notice-and-comment rulemaking:

- The POMS revisions on (a) Waiver of Hospital Insurance Entitlement by Monthly Beneficiary, POMS HI 00801.002, (b) Withdrawal Considerations, POMS HI 00801.034, and (c) Withdrawal Considerations When Hospital Insurance is Involved, POMS GN 00206.020; and

- The Center for Medicare and Medicaid Services ("CMS") Manual System's Charge Request 6417 and Charge Request 6421 (collectively, "CR6417/6421"); and

- HHS Interim Final Rule with Comment Period ("IFC"), 75 Fed. Reg. 24,437 (2010).

When district courts review administrative agencies' actions, they provide appellate review of those actions on the administrative record. *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 (D.C. Cir. 1993). Here, the record consists of the actions themselves.

**Relevant Local Rules**

Under the local rules, "[e]xcept as otherwise provided by these Rules, civil … cases shall be assigned to judges of this court selected at random." LCvR

40.3(a). Local Rule 40.5 requires plaintiffs filing in a civil action to indicate the existence of "related cases," LCvR 40.5(b)(2), which the court assigns to the judge hearing the oldest related case. LCvR 40.5(c)(1). In pertinent part, Local Rule 40.5 defines relatedness as either "involv[ing] common issues of fact" or "grow[ing] out of the same event or transaction." LCvR 40.5(a)(3)(ii)-(iii). Where a new case involves the same parties and same subject matter as a dismissed case, the newly-filed case relates to the dismissed case, LCvR 40.5(a)(4), which is "perhaps stronger" for cases with the same parties than the analogous LCvR 40.5(a)(3) criteria for cases with different parties. *Collins v. Pension Benefit Guaranty Corp.,* 126 F.R.D. 3, 8 (D.D.C. 1989). Defendants may object to related-case designations, LCvR 40.5(b)(2), and judges may transfer cases to the Calendar Committee upon determining that the cases are not related. LCvR 40.5(c)(1).

**Factual Background**

For dismissals under Rule 12(b), the relevant facts consist of the complaint and any permissible inferences, declarations filed in opposing the motion to dismiss, and any judicially noticeable materials.

## <u>STANDARD OF REVIEW</u>

This Court review Rule 12(b) dismissals *de novo. Barr v. Clinton,* 370 F.3d 1196, 1201 (D.C. Cir. 2004). With motions to dismiss, plaintiffs can rely on their pleadings to establish jurisdiction and viable causes of action. *Dep't of Commerce*

9

*v. U.S. House of Representatives,* 525 U.S. 316, 329 (1999); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). To assess jurisdiction under Rule 12(b)(1), a "court … must … assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. EPA,* 320 F.3d 228, 235 (D.C. Cir. 2003); *Catholic Social Service v. Shalala,* 12 F.3d 1123, 1126 (D.C. Cir. 1994). Taken together, Rules 12(b)(6) and 8(a)(2) require "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations and interior quotations omitted). Because the property rights protected by the Takings Clause are "fundamental," *McCoy v. Union Elevated R. Co.,* 247 U.S. 354, 365 (1918); *Hendler v. U.S.,* 175 F.3d 1374, 1376 (Fed. Cir. 1999), strict scrutiny applies to Plaintiffs' Fifth Amendment claims. *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992).

## SUMMARY OF ARGUMENT

With respect to Counts II-III, PPACA's "tax penalties" – which *NFIB* held to fall outside the federal Commerce Power but constructively within the Taxing Power – violate the Fifth Amendment as a compelled private subsidy from the healthy to those with preexisting conditions. Although penalizing the exercise of constitutional rights to refrain from voluntarily subsidizing private third parties triggers strict scrutiny, PPACA's discrimination cannot survive any level of

10

scrutiny. Moreover, because the *NFIB* saving construction converted the penalties to taxes, the Senate amendment inserting PPACA into H.R. 3590 qualifies as a revenue-raising bill that originated in the Senate, in violation of the Origination Clause. *See* Section II, *infra.*

Plaintiffs have standing to bring all of Count IV against the requirements to enroll in PECOS and to obtain an NPI because; the District Court erred by ignoring Plaintiffs' requested relief to declare that 42 U.S.C. §1395a(b)'s safe harbor does not require physicians to comply with §1395a(b)'s procedures in order to treat Medicare-eligible patients wholly outside of Medicare. As Spending-Clause legislation, Medicare cannot restrict those who decline the federal funds. No APA exception – which all are exceedingly narrow – applies to the Administration's using its PPACA-granted authority to address these issues. Moreover, because these agency actions rely on PPACA, they are substantively *ultra vires* to the extent that PPACA is void under the Origination Clause. *See* Section III, *infra.*

With respect to challenging the POMS amendments in Count I, the District Court's equity jurisdiction provides alternate jurisdiction, notwithstanding the claims-channeling provisions of 42 U.S.C. §§405(g)-(h), 1395ii; Plaintiffs' members include *facilities* that compete with Medicare Part A facilities, which provides competitive standing. On the procedural merits, the POMS amendments required rulemaking to add the new facet of beneficiaries' retroactively

11

reimbursing Social Security to escape Medicare Part A. *See* Section IV, *infra.*

Counts V-VI concern accountings for the Medicare and Social Security trust funds to address PPACA's negative impacts on those programs' solvency. Plaintiffs' members have economic and third-party standing, both as retirees and as physicians who work under Medicare, making it immaterial that the public shares the same injury. *See* Section V, *infra.*

Finally, because the POMS claims involved the same facts and grew out of the same transactions and events as *Hall,* the District Court was wrong to reject Plaintiffs' related-case designation, which complied with the local rules. Courts must follow until their rules until they amend those rules. *See* Section VI, *infra.*

## ARGUMENT

## I.     THIS COURT HAS ARTICLE III JURISDICTION ON ALL COUNTS

This section establishes jurisdiction over Plaintiffs' claims generally. Where the District Court found jurisdiction lacking for a claim, Plaintiffs rebut those findings in corresponding substantive section, *infra.*

### A.   Plaintiffs Have Standing

To establish standing, a plaintiff must show an "injury in fact" that is "arguably within the zone of interests to be protected or regulated" by the relevant statutory or constitutional provision. *Ass'n of Data Processing Serv. Org., Inc. v. Camp,* 397 U.S. 150, 153 (1970). An "injury in fact" is (1) an actual or imminent invasion of a constitutionally cognizable interest, (2) which is causally connected

to the challenged conduct, and (3) which likely will be redressed by a favorable decision. *Defenders of Wildlife,* 504 U.S. at 560-62. Statutes can confer rights, the denial of which constitutes injury redressable by a court. *Warth v. Seldin,* 422 U.S. 490, 514 (1975). For injuries directly caused by agency action, a plaintiff can show an injury in fact with "little question" of causation or redressability, but when an agency causes third parties to inflict injury, the plaintiff must show more to establish causation and redressability. *Defenders of Wildlife,* 504 U.S. at 561-62. Membership organizations may establish standing either in their own right or on behalf of their members. *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977).

### 1.  Plaintiffs Suffer Injuries in Fact

Injury includes both actual and threatened injury, *Los Angeles v. Lyons,* 461 U.S. 95, 101-02 (1983), which "need not be to economic or … comparably tangible" interests: an "identifiable trifle" suffices. *Pub. Citizen v. FTC,* 869 F.2d 1541, 1547-48 (D.C. Cir. 1989). Although an abstract or generalized interest (*e.g.,* proper government operation, general compliance with the law) cannot *establish* standing, the mere fact that many people share an injury cannot *defeat* standing. *FEC v. Akins,* 524 U.S. 11, 23 (1998). Moreover, "once a litigant has standing to request invalidation of a particular agency action, it may do so by identifying all grounds on which the agency may have failed to comply with its statutory

13

mandate." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 353 & n.5 (2006). Thus, Plaintiffs can challenge the Administration's action for any unlawfulness, once Plaintiffs establish their standing to challenge that action. *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 78-81 (1978) (standing doctrine has no nexus requirement outside taxpayer standing).

### a.   Statutory Freedom of Choice

In response to PPACA, many states – including Virginia, Idaho, Arizona, Georgia, Missouri, Oklahoma, and Louisiana – adopted "Freedom of Choice in Health Care Acts" to prohibit compelling their residents to purchase health insurance. *See* Compl. ¶81; OKLA. CONST. art. II, §37(B)(1); Smith Decl. ¶8 (Oklahoman physician suffering from PPACA's coercion of Oklahomans in his personal capacity and through patients); Orient Decl. ¶14 (Arizona physician). Although PPACA and the Supremacy Clause, U.S. CONST. art. VI, cl. 2, plainly would preempt these laws *if PPACA is lawful,* an unconstitutional federal statute cannot preempt state law. Accordingly, if PPACA is unlawful, these state-law rights establish standing against PPACA. *Warth,* 422 U.S. at 514; *Am. Trucking Ass'ns v. Dep't of Transp.,* 166 F.3d 374, 385 (D.C. Cir. 1999). These injuries provide standing for Counts II and III.

### b.   Competitive Injuries and Unequal Footing

Under the competitor-standing doctrine, the "injury claimed … is not lost

14

sales, *per se;*… [r]ather the injury claimed is exposure to competition." *Bristol-Myers Squibb Co. v. Shalala,* 91 F.3d 1493, 1499 (D.C. Cir. 1996); *Liquid Carbonic Indus. Corp. v. FERC,* 29 F.3d 697, 701 (D.C. Cir. 1994) ("[i]ncreased competition represents a cognizable Article III injury"). Moreover, "there is no need to wait for injury from specific transactions to claim standing" when the challenged action "will almost surely cause [Plaintiffs] to lose business. *El Paso Natural Gas Co. v. FERC,* 50 F.3d 23, 27 (D.C. Cir. 1995); *Diamond v. Charles,* 476 U.S. 54, 66 (1986) (physicians have standing to challenge state actions that financially affect their practices). Excluding Plaintiffs' physician members from the relevant PPACA and Medicare markets and advantaging their competitors constitute an "invasion of a legally protected interest…. in a manner that is 'particularized'" to Plaintiffs' members, which is an injury *per se,* whether or not the member would secure the benefit with the injury removed.[2] *Adarand Constructors, Inc., v. Pena,* 515 U.S. 200, 211 (1995). Plaintiffs' members suffer competitive and unequal-footing injuries with respect to Counts I, II, III, and IV. *See* Compl. ¶8; Orient Decl. ¶¶24-25; Smith Decl. ¶¶7-8, 10.

---

[2]     Although some would confine this "unequal footing" analysis, *Clinton v. New York,* 524 U.S. 417, 456-57 (1998) (Scalia, J., dissenting), the analysis plainly applies, not only outside equal protection but also to indirect injuries. *Clinton,* 524 U.S. at 433 & n.22.

### c.  Economic Injury and Regulatory Burden

Plaintiffs have standing to challenge actions that negatively impact their members with direct economic costs and administrative burdens. *Diamond,* 476 U.S. at 66; *Indep. Bankers Ass'n of Am. v. Heimann,* 613 F.2d 1164, 1167 (D.C. Cir. 1979). Similarly, unlawful administrative burdens "[c]learly… me[e]t the constitutional requirements, and… [Plaintiffs] therefore ha[ve] standing to assert [their] own rights," the "[f]oremost" of which is the "right to be free of arbitrary or irrational [agency] actions." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 263 (1977). Even if they or their members must seek future review in specific benefits proceedings, Plaintiffs have standing to challenge federal guidelines on *how* government programs work. *Int'l Union v. Brock,* 477 U.S. 274, 284 (1986). In all of the foregoing analysis, "courts routinely credit" "basic economic logic" for standing. *United Transp. Union v. I.C.C.,* 891 F.2d 908, 912 n.7 (D.C. Cir. 1989); *Sugar Cane Growers Co-op. of Florida v. Veneman,* 289 F.3d 89, 94 (D.C. Cir. 2002).

Distinct from the third-party injuries discussed in Section I.A.1.e, *infra,* Plaintiffs' members (both as physicians and as patients) also suffer from unlawful restrictions on the terms under which they interact with third parties. Significantly, "a litigant asserts his own rights (not those of a third person) when he seeks to void restrictions that directly impair his freedom to interact with a third person who

16

himself could not be legally prevented from engaging in the interaction." Henry P. Monaghan, *Third Party Standing,* 84 COLUM. L. REV. 277, 299 (1984); *FAIC Securities, Inc. v. U.S.,* 768 F.2d 352, 360 n.5 (D.C. Cir. 1985) (*citing* Monaghan); *Columbia Broadcasting System, Inc. v. U.S.,* 316 U.S. 407, 422-23 (1942); *Haitian Refugee Ctr. v. Gracey,* 809 F.2d 794, 811 n.13 (D.C. Cir. 1987).

Economic injuries cover all six counts, and administrative burdens cover Count IV. *See* Smith Decl. ¶¶6-15 (Counts I, II, IV); DuBeau Decl. ¶7-8 (Counts II, III); Orient Decl. ¶¶23-25 (I, IV); Christman Decl. ¶¶5-9 (Count II); Hammons Decl. ¶¶5-7 (Count IV); Compl. ¶¶23-27.

### d. Equal-Protection Injury

PPACA purportedly seek to protect the federal fisc from uninsured patients' imposing costs on the health system, arguing circularly that the government's decision to require emergency rooms to treat the public regardless of any ability to pay justifies acting against private citizens – who have not and will not contribute to any burden on the federal fisc, Christman Decl. ¶5; Smith Decl. ¶11 – to make up for the voluntary expenditure of federal funds.[3] At least with respect to

---

[3]    Even defendants must have standing to proceed, and the Administration's argument here reflects a self-inflicted injury. *Pennsylvania v. New Jersey,* 426 U.S. 660, 664 (1976); *Petro-Chem Processing, Inc. v. EPA,* 866 F.2d 433, 438 (D.C. Cir. 1989). While defendant United States may have the authority to tax the public generally and to provide benefits to some or all of the public, *Charles C. Steward Mach. Co. v. Davis,* 301 U.S. 548, 585 (1937), the authority to proceed discretely under the Taxing Power and under the Spending Clause (as the government argued

17

individuals who prefer and choose to maintain high-deductible, catastrophic-risk insurance and can make their deductible payments, Smith Decl. ¶11, the decision to impose burdens on these "self-paying" citizens, greater than the burdens imposed on citizens who hold PPACA-approved insurance, discriminates against those with high-deductible plans who do not burden the federal fisc. Clearly "tax schemes with exemptions may be discriminatory," *CSX Transp., Inc. v. Alabama Dep't of Revenue,* 131 S. Ct. 1101, 1109 (2011), and in such equal-protection contexts, "the appropriate remedy is a mandate of *equal* treatment, [which] can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Heckler v. Mathews,* 465 U.S. 728, 740 (1984) (emphasis in original). Accordingly, equal-protection principles prohibit selectively taxing these self-paying citizens who decline to subsidize private third parties by purchasing PPACA-compliant insurance.

Precisely to avoid equal-protection violations, states that condition the *privilege* of a driver's license on maintaining minimum insurance *for third-party liability* allow alternatives like self-insurance, bonds, and certificates of deposit for the required coverage. *See, e.g.,* CAL. VEH. CODE §16053; OHIO REV. CODE ANN. §4509.45; LA. REV. STAT. ANN. §32:104. Failure to provide these alternatives on

---

in *Steward Machine*) differs completely from PPACA's cobbled-together mandates of private actions, private subsidies, and penalties that violate the Fifth Amendment under *any* level of scrutiny. *See* Section II.B, *infra.*

equal terms with the insurance option constitutes an equal-protection violation. *Hebard v. Dillon,* 699 So.2d 497, 503 (La. App. 1997); *Jitney Bus Ass'n v. City of Wilkes-Barre,* 256 Pa. 462, 469, 100 A. 954, 956 (Pa. 1917); *People v. Kastings,* 307 Ill. 92, 108-09, 138 N.E. 269, 275 (Ill. 1923). The foregoing automobile-insurance decisions demonstrate that mandates – when lawful at all – must comply with equal-protection principles.

### e. Third-Party Standing

Following *Powers v. Ohio,* 499 U.S. 400, 411 (1991), this Circuit allows third-party standing *inter alia* where the first-party suffers a constitutional injury in fact, has a close relationship with the third party, and "some hindrance" prevents the third party's asserting its own rights. *Am. Immigration Lawyers Ass'n v. Reno,* 199 F.3d 1352, 1361-62 (D.C. 2000) ("*AILA*").[4] Moreover, associations like Plaintiffs can assert third-party standing based on the relationships between members and third parties. *Fraternal Order of Police v. U.S.,* 152 F.3d 998, 1001-02 (D.C. Cir. 1998); *Nat'l Cottonseed Prod. Ass'n v. Brock,* 825 F.2d 482, 490 (D.C. Cir. 1987). Indeed, under this Circuit's vendor-standing decisions and analogous Supreme Court decisions, plaintiffs need not identify a *specific* third party (*i.e., potential* customers suffice). *Nat'l Cottonseed Prod. Ass'n,* 825 F.2d at

---

[4]      The hindrance prong is not mandatory. *Caplin & Drysdale v. U.S.*, 491 U.S. 617, 624 n.3 (1989).

490); *Craig v. Boren,* 429 U.S. 190, 194-95 (1976); *Carey v. Population Serv., Int'l,* 431 U.S. 678, 683 (1977). Once a plaintiff has established *constitutional* standing, that plaintiff may rely on third-party standing to satisfy the merely *prudential* zone-of-interest test. *FAIC Securities,* 768 F.2d at 357-61; *Carey,* 431 U.S. at 682-86. Under these third-party principles, *if Plaintiffs have standing* (which Plaintiffs contend that they have, Sections I.A.1.a-d, *supra,* I.A.1.f-I.A.2, *infra*), Plaintiffs must show a close relationship with, and some hindrance to, their patients in order to assert the patients' rights.

Significantly, "unawareness of the injury" qualifies as a sufficient hindrance, *AILA,* 199 F.3d at 1363. Thus, unlike the aliens in *AILA,* the patients and prospective patients of Plaintiffs' physician members will not know of the risks they face. Because the Administration famously promised that PPACA allows those who liked their insurance to keep it, Joseph Decl. ¶5, many patients and prospective patients are simply unaware of the changes that PPACA will wreak on private insurance. Joseph Decl. ¶8. As in *Powers,* 499 U.S. at 415, individual patients will have little incentive to sue because the cost of such litigation would outweigh the near-term savings. As such, physicians can "by default [become] the right's best available proponent." *AILA,* 199 F.3d at 1362 (quotations omitted). Waiting for patients to sue will be too late.

Third-party standing applies to Counts I, II, III, V, and VI and the parts of

Count IV that concern Medicare-eligible patients' abilities to see Plaintiffs' physician members wholly outside of Medicare and Plaintiffs' physician members to refer Medicare services for Medicare-eligible patients outside of PECOS. Smith Decl.¶ ¶6, 10; Orient Decl. ¶¶24-25; Hammons Decl. ¶7; Compl. ¶30.

### f.   Procedural Injury

"The history of liberty has largely been the history of observance of procedural safeguards." *Dart v. U.S.,* 848 F.2d 217, 218 (D.C. Cir. 1988) (*quoting McNabb v. U.S.,* 318 U.S. 332, 347 (1943)). Counts I-IV challenge failures to observe such safeguards, for which "those adversely affected… generally have standing to complain." *Akins,* 524 U.S. at 25. Rescission and remand may produce the same result, *id.,* but until that happens, the initial injury remains "fairly traceable" to the agency's initial action, and redressable by an order striking the initial agency action. *id.; Animal Legal Defense Fund v. Glickman,* 154 F.3d 426, 444 (D.C. Cir. 1998) (*en banc*) ("*ALDF*"). Plaintiffs need not show that following the required procedures will provide the desired result: "If a party claiming the deprivation of a right to notice-and-comment rulemaking . . . had to show that its comment would have altered the agency's rule, section 553 would be a dead letter." *Sugar Cane Growers, ,* 289 F.3d at 94-95.

Because Plaintiffs also allege several concrete injuries, *see* Sections I.A.1.a-e, *supra,* they have standing to challenge these procedural violations. *Florida*

*Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664-65 (D.C. Cir. 1996) (*en banc*); *Defenders of Wildlife,* 504 U.S. at 571-72 & n.7. Given these concrete injuries, redressability and immediacy apply to the *present procedural violation,* which may someday injure the concrete interest, rather than to the concrete (but less certain) future injury. *Nat'l Treasury Employees Union v. U.S.,* 101 F.3d 1423, 1428-29 (D.C. Cir. 1996).

### 2.  Plaintiffs' Injuries Fall Within the Zones of Interests

Standing's "zone-of-interest" test is a prudential doctrine that asks whether the interests to be protected *arguably* fall within those protected by the relevant statute. *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust, Co.,* 522 U.S. 479, 492 (1998). This generous and undemanding test focuses not on Congress' intended beneficiary, but on those who in practice can be expected to police the interests that the statute protects. *ALDF,* 154 F.3d at 444; *Am. Friends Serv. Comm. v. Webster,* 720 F.2d 29, 52 (D.C. Cir. 1983). To show that they are *arguably* "protected" by a statute, plaintiffs may demonstrate that they are either the statute's intended beneficiaries or "suitable challengers" to enforce the statute.

For intended beneficiaries, "'slight beneficiary indicia' are sufficient to sustain standing." *Am. Friends Serv. Comm.,* 720 F.2d at 50 & n.37. Even if not intended beneficiaries, plaintiffs satisfy the zone of interests as "suitable challengers" if they have "interests… sufficiently congruent with those of the

intended beneficiaries that [they] are not more likely to frustrate than to further the statutory objectives." *First Nat'l Bank & Trust Co. v. Nat'l Credit Union Admin.,* 988 F.2d 1272, 1275 (D.C. Cir. 1993).

Even competitors who would be unsuitable challengers for open-ended statutory questions are suitable enough to challenge clear statutory or constitutional demarcations: "the *Hazardous Waste Treatment Council* line of cases is inapposite when a competitor sues to enforce a *statutory demarcation, such as an entry restriction,* because the potentially limitless incentives of competitors [are] channeled by the terms of the statute into suits of a limited nature brought to enforce the statutory demarcation." *Honeywell Int'l, Inc. v. EPA,* 374 F.3d 1363, 1370 (D.C. Cir. 2004) (emphasis added, alteration in original), *withdrawn in part on other grounds,* 393 F.3d 1315 (D.C. Cir. 2005); *N.C.U.A.,* 988 F.2d at 1278; *Scheduled Airlines Traffic Offices, Inc. v. D.O.D.,* 87 F.3d 1356, 1360-61 (D.C. Cir. 1996). In any event, with ultra vires conduct, the zone-of-interest test either does not apply or applies to the due process clause's wider zone. *Haitian Refugee Ctr.,* 809 F.2d at 811-12 & nn.13-14; *Chiles v. Thornburgh,* 865 F.2d 1197, 1210-11 (11th Cir. 1989). Accordingly, the zone-of-interest test poses no obstacle to Plaintiffs' standing.

### B.     Plaintiffs' Claims Are Ripe

Like standing, ripeness has a constitutional and a prudential component,

with the constitutional component essentially mirroring the constitutional standing component of a case or controversy. U.S. CONST. art. III, §2; *DKT Memorial Fund Ltd. v. A.I.D.,* 887 F.2d 275, 298 (D.C. Cir. 1989). If Plaintiffs currently have constitutional standing, their claims are constitutionally ripe, and vice versa.

The timing of future impacts – even if years off – provides no barrier to justiciability: "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.,* 130 S. Ct. 1758, 1767 n.2 (2010). Here, Plaintiffs will hit this wall, circa 2014 or 2015, Christman Decl. ¶6; Smith Decl. ¶12, and Plaintiffs allege that they already are facing burdens from the impending wall. Compl. ¶21.

Working under a "presumption of reviewability," prudential ripeness requires "pragmatic balancing" of the fitness for review (*i.e.,* "the interests of the court and agency in postponing review") versus the hardship of postponing review (*i.e.,* petitioner's "countervailing interest in securing immediate judicial review"). *Ciba-Geigy Corp. v. EPA,* 801 F.2d 430, 434 (D.C. Cir. 1986); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140 (1967). Purely legal issues – like those at issue here – are presumptively fit for review. *AT&T Corp. v. FCC,* 349 F.3d 692, 699 (D.C. Cir. 2003). The hardship prong comes into play when a claim is not fit

24

for review, such that the plaintiff "must demonstrate that postponing review will cause [it] 'hardship' in order to overcome a claim of lack of ripeness and obtain review of the challenged rule at this time." *Florida Power & Light Co. v. E.P.A.,* 145 F.3d 1414, 1420-21 (D.C. Cir. 1998). Indeed, when no institutional issues counsel to for postponing review, the hardship prong is "unnecessary." *Public Service Elec. & Gas Co. v. F.E.R.C.,* 485 F.3d 1164, 1168 (D.C. Cir. 2007); *Sabre, Inc. v. DOT,* 429 F.3d 1113, 1120 (D.C. Cir. 2005).

Significantly, the foregoing analysis relates only to *substantive* injuries because procedural injuries are extant today and can never get more ripe. *Ohio Forestry Ass'n, Inc., v. Sierra Club,* 523 U.S. 726, 737 (1998). Insofar as all their claims include a procedural element, Plaintiffs' claims are prudentially ripe.

## C.    The District Court Has Statutory Subject-Matter Jurisdiction

In addition to jurisdiction under Article III and related prudential doctrines, Plaintiffs also must have statutory subject-matter jurisdiction. As explained in this section, nothing bars jurisdiction here.

### 1.    The District Court Has Federal-Question Jurisdiction

In 1976, Congress expanded the federal-question statute to include all challenges to federal administrative agencies and officers by removing the then-applicable amount-in-controversy requirement. *Califano v. Sanders,* 430 U.S. 99, 105 (1977) (*citing* S. REP. NO. 94-996 at 12 (1976)). "The obvious effect of

25

[eliminating §1331's amount-in-controversy requirement against federal agencies and officers], subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Sanders,* 430 U.S. at 107. Unless expressly excluded, the federal-question statute provides jurisdiction.

### 2. The District Court Has Equity Jurisdiction

The District Court long has had equity jurisdiction over federal officers that exceeds that of other district courts. *Kendall v. U.S. ex rel. Stokes,* 37 U.S. (12 Pet.) 524, 580-81 (1838); *Stark v. Wickard,* 321 U.S. 288, 290 n.1 (1944); *Peoples v. Dep't of Agriculture,* 427 F.2d 561, 564 (D.C. Cir. 1970). Neither the APA nor the Mandamus Act displaced or limited this historic jurisdiction, which derives both from the court's enabling legislation and Maryland's ceding the District's territory to form the District as a federal enclave. *Peoples,* 427 F.2d at 565; *Ganem v. Heckler,* 746 F.2d 844, 851 (D.C. Cir. 1984). The current statute confers the same jurisdiction as that on which the *Peoples* court relied. *Compare* D.C. CODE §11-501 *with* D.C. CODE §11-521 (1967). Both versions grant this Court "any other jurisdiction conferred *by law*" in addition to "jurisdiction as a United States district court." The "laws" expressly conferring this Court with "general jurisdiction in law and equity" dates back to 1801. Act of February 27, 1801, 2 Stat. 103; Act of

March 3, 1863, 12 Stat. 762; Act of June 25, 1936, 49 Stat. 1921.

The District of Columbia Court Reorganization Act of 1970 did not impliedly repeal the prior jurisdiction. *Schlesinger v. Councilman,* 420 U.S. 738, 752 (1975) ("'repeals by implication are disfavored,' and this canon of construction applies with particular force when the asserted repealer would remove a remedy otherwise available"); *Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 662 (2007) (implied repeals require "clear and manifest" legislative intent). Indeed, the legislative history of the 1976 APA amendments to waive sovereign immunity notes that, under the then-current law, plaintiffs could escape the §1331's then-applicable $10,000 amount-in-controversy requirement by seeking to enjoin federal officers in the District of Columbia. H.R. REP. NO. 94-1656, at 15-16, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6136. In other words, Congress itself recognized in 1976 that its 1970 Reorganization Act had left intact the District Court's unique equity jurisdiction over federal actors.

### 3.   No Tax-Related Restrictions Bar Review

The Anti-Injunction Act, 26 U.S.C. §7421(a), and 28 U.S.C. §2201(a) pose no barrier to judicial review because – while PPACA's penalties qualify as taxes for *constitutional purposes* under the *NFIB* "saving construction" – those penalties are not taxes for *statutory purposes. NFIB,* 132 S.Ct. at 2584. No statute denies jurisdiction here.

27

## II.    PPACA'S PENALTIES ARE UNCONSTITUTIONAL

Plaintiffs argue that PPACA exceeds the Commerce Power and violates the Fifth Amendment and that its enactment violated the Origination Clause. The following subsections address these three bases to invalidate PPACA.

### A.    PPACA's Mandates Violate the Commerce Power and All Other Enumerated Powers Except Potentially the Taxing Power

Although they press Origination-Clause and Fifth-Amendment claims that *NFIB* did not reach, Plaintiffs also rely on *NFIB* for the lack of federal authority to enact PPACA's insurance mandate, outside the Taxing Power. Under *Agostini,* 521 U.S. at 237, *NFIB* binds this Court.

### B.    PPACA's Tax Penalties Violate the Fifth Amendment

As a facial challenge under the Commerce Clause, *NFIB* did not consider the Fifth Amendment issues that Plaintiffs raise here and *a fortiori* did not consider them *as applied* to Plaintiffs' members.[5] Thus, Plaintiffs could prevail against PPACA, *as applied to them,* even if *NFIB* had facially raised issues under the Fifth Amendment: "That the regulation may be invalid as applied … does not mean that

---

[5]    As argued before the Supreme Court, *NFIB* did not present any Fifth Amendment claims, and the case never addressed takings at all. *See NFIB,* 132 S.Ct. at 2623 (Opinion of Ginsburg, J.); *Florida ex rel. Atty. Gen. v. U.S. Dept. of Health & Human Serv.,* 648 F.3d 1235, 1292 n.93 (11th Cir. 2011) (plaintiffs did not appeal dismissal of substantive due-process claim for fundamental contract rights). The District Court's suggestion (JA __ n.6) that Plaintiffs have not brought an as-applied challenge is puzzling, given that the Fifth Amendment claim relies on PPACA's compelled subsidies of those with preexisting conditions and equal-protection violations, which both entail groups' differential treatment.

the regulation is facially invalid," and vice versa. *I.N.S. v. Nat'l Ctr. for Immigrants' Rights,* 502 U.S. 183, 188 (1991); *Sorrell v. IMS Health Inc.,* 131 S.Ct. 2653, 2665 (2011). Moreover, the *NFIB* Court was unanimous that a tax cannot violate the Fifth Amendment and remain lawful. *NFIB,* 132 S.Ct. at 2598 (Roberts, C.J., for the Court); *id.* at 2624 (Ginsburg, J.); *id.* at 2650 (Joint Opinion of Scalia, Kennedy, Thomas, and Alito, J.J.). PPACA presents just such a tax and therefore is void under the Fifth Amendment.[6]

Given "the substantial conceptual overlap between takings and taxes, legal scholars … have long puzzled over the apparently inconsistent treatment the two topics receive under the applicable constitutional law." Eduardo Moisés Peñalver, *Regulatory Takings,* 104 COLUM. L. REV. 2182, 2185 (2004). Taken back to first principles, the two concepts are distinct enough. Takings concerned eminent domain for real property, which was distinct from taxation. The advent of regulatory takings and regulatory taxation, however, has blurred the two concepts

---

[6]     Clearly, "the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause." *Brushaber v. Union Pac. R. Co.,* 240 U.S. 1, 24 (1916). In other words, the Takings Clause does not swallow the Taxing Power. By the same token, "any tax must still comply with other requirements in the Constitution," *NFIB,* 132 S.Ct. at 2598 (Roberts, C.J., for the Court), which means that the Taxing Power does not swallow any other provision of the Constitution either. Exercise of the Taxing Power can amount to a taking, if the tax is so "arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property." *Brushaber,* 240 U.S. at 24.

and requires resolution. *Id.* at 2188-89 ("reconciling takings with taxation has come into sharper relief"). Notwithstanding this recently "sharper relief," courts have long recognized a connection in extreme cases:

> the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation.

*Vill. of Norwood v. Baker,* 172 U.S. 269, 278-79 (1898); *cf. Colorado Springs Prod. Credit Ass'n v. Farm Credit Admin.,* 967 F.2d 648, 654 (D.C. Cir. 1992). Plaintiffs respectfully submit that this is just such an "extreme case" and that the *Norwood* principle requires declaring PPACA invalid under the Fifth Amendment.

### 1. The Government Cannot Avoid the Constitution By Indirectly Compelling What the Government Lacks Authority to Require

Assuming *arguendo* that its insurance requirements would be unconstitutional as a public program, *see* Section II.B.2, *infra,* PPACA cannot escape review by coercing – under the threat of a penalty – the public's "voluntary" participation:

> It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. Constitutional rights would be of little value if they could be … indirectly denied or manipulated out of existence.

*Harman v. Forssenius,* 380 U.S. 528, 540 (1965) (citations and interior quotations omitted, alteration in original). Simply put, the government cannot use indirection

to defeat constitutional rights that the government cannot defeat directly. *Frost v. R.R. Comm'n of State of California,* 271 U.S. 583, 593-94 (1926); *cf. Rust v. Sullivan,* 500 U.S. 173, 175 (1991) (unconstitutional to "condition the receipt of a benefit … on the relinquishment of a constitutional right"). As applied here, the government cannot tax the public's declining to consent voluntarily to a taking without just compensation (*i.e.,* declining to consent to confiscation). But that is precisely what PPACA does: present the "choice" of either (a) purchasing PPACA-sanctioned insurance – which the Administration has absolutely no authority to compel the public to purchase – that subsidizes those with preexisting conditions, or (b) paying PPACA's penalty for exercising the right to say "no, thanks" to PPACA's request to subsidize others. PPACA is no different than a hypothetical "Good Neighbor Act" that gives property owners with lots greater than an acre the "choice" between giving a half acre to house the homeless or else paying a "Bad Neighbor Tax." Insofar as excluding others is "traditionally … one of the most treasured strands in an owner's bundle of property rights," *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 435-36 (1982), the Good Neighbor Act's Bad Neighbor Tax indirectly nullifies property rights in violation of *Harman, Frost, Rust,* and the Fifth Amendment. So too does PPACA's tax penalty.

## 2. Viewed as a Government Program, the PPACA Insurance Requirements Violate the Fifth Amendment

If it were a government program in its own right, PPACA's insurance

31

regime would "take" that portion of insurance premiums that subsidizes lower premiums for those with pre-existing conditions and other premium-elevating circumstances.[7] That violates the Takings Clause in several respects.

First, under the Takings Clause, "public burdens … should be borne by the public as a whole." *Armstrong v. U.S.,* 364 U.S. 40, 49 (1960). But, in an attempt to avoid the appearance of taxation and welfare spending, PPACA asks healthy private individuals to support unhealthy private individuals. That plainly violates the Takings Clause: "it has long been accepted that the sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B,* even though *A* is paid just compensation." *Kelo v. City of New London,* 545 U.S. 469, 477 (2005) (emphasis in original). Our Constitution does not allow the federal government use indirection to short circuit accountability for taxing and spending.

Second, even private entities with the power of eminent domain must

---

[7]    If Plaintiffs' members maintain PPACA-noncompliant high-deductible insurance and thereby elect to pay PPACA's tax penalties, they get *nothing* valuable from PPACA. But even if they go with PPACA-compliant insurance to avoid the tax penalties, they would pay higher premiums to subsidize PPACA's favorable treatment of those with pre-existing conditions, which means that Plaintiffs' members still would not get "significant, concrete, and disproportionate benefits" for that portion of their insurance premiums that insurers take to subsidize the low premiums that PPACA makes available for those with pre-existing conditions. *Colo. Springs Prod. Credit Ass'n,* 967 F.2d at 654. Under actuarial principles, this easily qualifies as a "specific, separately identifiable fund of money" subject to the Takings Clause. *Eastern Enterprises v. Apfel,* 524 U.S. 498, 555 (1998) (Breyer, J., dissenting); *accord* 524 U.S. at 529 (plurality).

comply with constitutional limits on takings. *Pacific Gas & Electric Co. v. Hay,* 68 Cal.App.3d 905, 910-11 (Cal. App. 1977). Thus, when private insurers apply healthy insureds' funds to subsidize third parties' insurance premiums, the insurers' private nature cannot protect PPACA from the Fifth Amendment. Acting through such private relationships "does not magically transform general public welfare, which must be supported by all the public, into mere 'economic regulation,' which can disproportionately burden particular individuals." *Pennell v. San Jose,* 485 U.S. 1, 21-22 (1988) (Scalia, J., concurring in part and dissenting in part). Unless such a regime provides a remedy for the return of money wrongfully taken – under threat of fines – the "statute is unconstitutional … because it does not provide indemnity for what it requires." *Missouri P. R. Co. v. Nebraska,* 217 U.S. 196, 208 (1910). Insurers' private nature cannot shelter PPACA from the Fifth Amendment.

Third and finally, the Takings Clause can apply to money paid into an account like insurance. *R.R. Retirement Bd. v. Alton R.R. Co.,* 295 U.S. 330, 357 (1935). Clearly, laws that require part of a money account to be "transferred to a different owner for a legitimate public use … could be a per se taking requiring the payment of 'just compensation' to the" money's original owner. *Brown v. Legal Found.,* 538 U.S. 216, 240 (2003). The part of insurance premiums that subsidizes artificially low premiums for those with preexisting conditions is taken – for

33

private use, no less – and requires compensation and indemnity.

### C.    PPACA's Enactment Violated the Origination Clause

By decentralizing power among the three branches and by placing the taxing power in the hands of the legislative branch closest to the People, the Founders intended Separation of Powers generally and the Origination Clause specifically to protect liberty. *U.S. v. Munoz-Flores,* 495 U.S. 385, 394-96 (1990). Given the constructive tax in the Chief Justice's saving construction, PPACA would be void if the Senate's PPACA amendments to SMHOTA violated the Origination Clause.

This Nation dissolved its ties with England largely because of unfair taxation, with England's "imposing taxes on us without our consent" among the grievances laid out in the Declaration of Independence. Having waged war to escape such taxes, the Founders carefully designed the Constitution so that the People could control their new government:

> "The consideration which weighed ... was, that the [House] would be the immediate representatives of the people; the [Senate] would not. Should the latter have the power of giving away the people's money, they might soon forget the source from whence they received it."

5 J. Elliot, DEBATES ON THE ADOPTION OF THE FEDERAL CONSTITUTION 283 (1881) (George Mason of Virginia). Alternatively, the Origination Clause "will oblige some member in the lower branch to move, and people can then mark him." *Id.* at 189 (Hugh Williamson of North Carolina). As explained in the next three

subsections, PPACA violated this central tenet of our Democracy.[8]

### 1.    As a Tax Under the *NFIB* Saving Construction, PPACA Raises Revenue Within the Meaning of the Origination Clause

Although the Supreme Court has declined definitively to outline the contours of what qualifies as a revenue-raising bill under the Origination Clause, *Twin City Bank v. Nebeker,* 167 U.S. 196, 202 (1897), the Court's decisions have outlined the key terms sufficiently for this purpose. First, "revenue bills are those that levy taxes in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue." *Id.* (*citing* 1 J. Story, COMMENTARIES ON THE CONSTITUTION §880, pp. 610-611 (3d ed. 1858)). Justice Story's treatise identified several examples of non-revenue bills that might "incidentally create revenue": (1) "bills for establishing the post office and the mint, and regulating the value of foreign coin;" (2) "a bill to sell any of the public lands, or to sell public stock;" and (3) "a bill [that] regulated the value of foreign or domestic coins, or

---

[8]    Significantly, federal courts have the ultimate duty to interpret the Origination Clause (*e.g.,* "whether a bill is 'for raising Revenue' or where a bill 'originates'"). *Munoz-Flores,* 495 U.S. at 396; *City of Boerne v. Flores,* 521 U.S. 507, 524 (1997) ("power to interpret the Constitution … remains in the Judiciary"). This is particularly appropriate here, where the Legislative Branch's two houses have divergent interests in the Clause's breadth. *See, e.g.,* VI CANNON'S PRECEDENTS OF HOUSE OF REPRESENTATIVES OF THE UNITED STATES §317 (1935) (Senate and House in the 68th Congress reached opposite conclusions on whether the Origination Clause applied to S. 3674). In administrative law, courts deny deference more than one agency interprets a statute. *U.S. v. Mead Corp.,* 533 U.S. 218, 227-28 (2001); *Wachtel v. O.T.S.,* 982 F.2d 581, 585 (D.C. Cir. 1993).

authorized a discharge of insolvent debtors upon assignments of their estates to the United States, giving a priority of payment to the United States in cases of insolvency." Story, COMMENTARIES §880. Here, PPACA raises taxes.

The Origination Clause applies not only to whole bills but also to discrete sections and amendments, asking whether the "act, or by *any of its provisions"* had the purpose of "rais[ing] revenue to be applied in meeting the expenses or obligations of the government." *Nebecker,* 167 U.S. at 202-03 (emphasis added). Under *NFIB,* to the extent that they could be constitutional at all, PPACA's taxes qualify as income taxes.[9] As income taxes, PPACA's taxes therefore supply revenue to the Treasury and "levy taxes in the strict sense of the word," rather than "incidentally create revenue." *Nebeker,* 167 U.S. at 202. Thus, even if PPACA as a whole has some other purposes, the PPACA provisions at issue – namely, the tax penalties – have no other constitutional purpose but the raising of revenue under the Chief Justice's saving construction.

---

[9]      *NFIB* held that the PPACA taxes are not direct taxes that must be apportioned to the census. *NFIB,* 132 S.Ct. at 2599. Although *NFIB* did not go further and hold what type of tax PPACA *actually is,* the only other choices are duties, imposts and excises (which the Constitution requires to be uniform), U.S. CONST. art. I, §8, and income taxes. U.S. CONST. amend. XVI. Plaintiffs submit that, because PPACA's taxes are not uniform, 26 U.S.C. §5000A(e)(1)(B)(ii), (f)(1)(C), (f)(2)(A)-(B); 42 U.S.C. §300gg-91(d)(8); 29 U.S.C. §1002(32) ("individual" tax); 26 U.S.C. §4980H(a)(1) ("employer" tax incorporates criteria from 26 U.S.C. §5000A(f)(2)); *see also* 26 U.S.C. §5000A(f)(2)(A)-(B); 42 U.S.C. §300gg-91(d)(8); 29 U.S.C. §1002(32) (criteria incorporated into "employer" tax), PPACA's taxes must be income taxes.

Significantly, PPACA's tax penalties cannot qualify as special assessments under the "general rule" that statutes that create a regulatory program may simultaneously raise funds to support that program. *Munoz-Flores,* 495 U.S. at 397-98 ("a statute that creates a particular governmental program and that raises revenue to support that program, as opposed to a statute that raises revenue to support Government generally, is not a 'Bil[l] for raising Revenue' within the meaning of the Origination Clause"). Under that "general rule," revenue raised via targeted provisions such as the "special assessment provision at issue in th[at] case" fall outside the Origination Clause. *Id.* at 398; *Nebeker,* 167 U.S. at 202-03; *Millard v. Roberts,* 202 U.S. 429, 436-37 (1906). By contrast, §5000A can avoid other constitutional tax-related infirmities – *see* note 9, *supra* – only as income tax under the Sixteenth Amendment, and PPACA's regulatory program is wholly outside of the federal power except taxation.

Unlike special assessments, PPACA's taxes are collected in connection with the income tax, with annual revenue approximating $4 billion by 2017, *NFIB,* 132 S. Ct. at 2594, going to the general funds of the U.S. Treasury. 44 Cong. Rec. 4420 (1909) (Mr. Heflin); *Haskin v. Secretary of the Dep't of Health & Human Serv.,* 565 F.Supp. 984, 986-87 (E.D.N.Y. 1983) (*citing* 2 H. McCormick, SOCIAL SECURITY CLAIMS AND PROCEDURES 418 (3d ed. 1983)). If funds "go into the Treasury … just exactly as do the moneys which arise from tariff taxes or internal

37

revenue taxes or any other taxes [where they] would be mingled with and become a part of all the revenues of this Government," the statute "is as completely a revenue bill as it is possible to make it." VI CANNON'S PRECEDENTS OF HOUSE OF REPRESENTATIVES OF THE UNITED STATES §316 (1935) (argument supporting successful point of order to table a Senate-originated bill) (Rep. McKellar). Moreover, as justified by *NFIB* under the Taxing Power, §5000A's tax penalty is not part of PPACA's governmental program. It survives solely as a tax. Thus unlike in *Munoz-Flores* and in "*Nebeker* and *Millard* [where] the special assessment provision was passed as part of a particular program to provide money for that program" and where "[a]ny revenue for the general Treasury … create[d] is thus 'incidenta[l]' to that provision's primary purpose," *Munoz-Flores,* 495 U.S. at 399, *NFIB* justifies the taxes here *solely* for their revenue-raising purpose of providing tax revenue to the general Treasury.

Finally, the lack of relationship between costs assessed against Plaintiffs' members to subsidize third parties' insurance premiums would doom PPACA, even if it could otherwise qualify as a special assessment. Even while deeming special assessments levied on criminals to compensate victims as falling outside the Origination Clause's reach, *Munoz-Flores* acknowledged that "[a] different case might be presented if the program funded were entirely unrelated to the persons paying for the program." *Munoz-Flores,* 495 U.S. at 401 n.7. As applied to

Plaintiffs' members with adequate – but PPACA-noncompliant – insurance, PPACA's taxes are "entirely unrelated to the persons paying for the program," *id.,* with no "element of contract" to justify the exchange. *Roberts,* 202 U.S. at 437. Even if some hypothetical tax could qualify as a special assessment, therefore, PPACA's taxes cannot.

## 2.    The House Bill Was Not a Revenue-Raising Bill for Purposes of the Origination Clause

The Senate's authority to attach revenue-raising amendments to House bills applies only to House *revenue* bills. James Saturno, Section Research Manager, Congressional Research Serv., *The Origination Clause of the U.S. Constitution: Interpretation and Enforcement,* at 6 (Mar. 15, 2011) (*citing* 2 HINDS' PRECEDENTS OF THE HOUSE OF REPRESENTATIVES OF THE UNITED STATES §1489 (1907)); *Sperry Corp. v. U.S.,* 12 Cl. Ct. 736, 742 (1987), *rev'd on other grounds,* 853 F.2d 904 (Fed. Cir. 1988); *Armstrong v. U.S.,* 759 F.2d 1378, 1382 (9th Cir. 1985); Thomas L. Jipping, *TEFRA and the Origination Clause: Taking the Oath Seriously,* 35 BUFF. L. REV. 633, 688 (1986). If the Senate PPACA amendments raise revenue – as opposed to establishing a regulatory program – this Court must determine whether SMHOTA was a "bill[] for raising revenue" into which the Senate could import its PPACA amendments.[10]

---

[10]     In adopting the Senate amendments, the House did not acquiesce to an Origination-Clause violation, given that §5000A (as passed by Congress) was not

### a.     Bills that Close Revenue Streams Do Not "Raise" Revenue

To analyze whether SMHOTA "raises revenue," a court must define that phrase. Although this Circuit has not decided the issue, competing extra-circuit interpretations have focused on whether bills must *increase* revenues or merely *levy* revenues (*i.e.,* without increasing revenues).[11] Plaintiffs respectfully submit that this increase-levy dichotomy obscures a third category of bill relevant here. Specifically, bills that *close* a particular revenue stream do not raise revenue.

The extra-circuit decisions holding "raise" to mean "levy" arise under the Tax Equity & Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 (1982) ("TEFRA"), and focus primarily on whether the Senate's tax-increasing amendment was germane to the House's tax-cutting bill under *Flint v. Stone Tracy Co.,* 220 U.S. 107 (1911). *See Wardell,* 757 F.2d at 204-05 (collecting cases).

---

even a tax as far as Congress was concerned. *NFIB,* 132 S.Ct. at 2582-84. The Senate cannot avoid the Origination Clause merely by "enact[ing] revenue-raising bills so long as it merely describes such bills as 'user fees'" or (here) penalties. *Sperry Corp. v. U.S.,* 925 F.2d 399, 402 (Fed. Cir. 1991). Only now that §5000A is unambiguously a tax, and *only a tax,* is the Origination Clause violation clear. In any event, the House *cannot* acquiesce to a violation of the Constitution. *Munoz-Flores,* 495 U.S. at 391. Origination-Clause claims thus presents justiciable separation-of-powers questions on which courts have the final word. *Id.* at 393.

[11]     *Compare Bertelsen v. White,* 65 F.2d 719, 722 (1st Cir. 1933) (statute that "diminishes the revenue of the government" "is not a bill to raise revenue") with *Armstrong,* 759 F.2d at 1381-82; *Wardell v. U.S.,* 757 F.2d 203, 204-05 (8th Cir. 1985); *Heitman v. U.S.,* 753 F.2d 33, 35 (6th Cir. 1984); *Rowe v. U.S.,* 583 F. Supp. 1516, 1519 (D. Del.), *aff'd mem.* 749 F.2d 27 (3d Cir. 1984).

40

Because the House bill there *levied* revenues without *increasing* revenues, the

TEFRA cases are inapposite to bills like SMHOTA that do not levy any revenue,

but instead close various revenue streams.

Where they delve deeper than germaneness,[12] the TEFRA cases rely on the

seminal 1870s congressional dispute on the Origination Clause. *See Armstrong,*

759 F.2d at 1381-82. That history supports the conclusion that closing revenue

streams does not "raise" revenue. The 1870s dispute arose because the House

relied on the Origination Clause first to return a Senate-initiated bill that repealed a

tax, then to return Senate revenue-raising amendments to a House bill to repeal a

tax. *See* 2 HINDS' PRECEDENTS §1489. In response to these mutually inconsistent

measures, a Senate committee evaluated the Origination Clause and reported its

findings to both the Senate and House:

> Suppose the existing law lays a duty of 50 per cent[.]
> upon iron. A bill repealing such law, and providing that
> after a certain day the duty upon iron shall be only 40 per
> cent[.], is still a bill for raising revenue, because that is
> the end in contemplation. Less revenue will be raised
> than under the former law, still it is intended to raise
> revenue, and such a bill could not constitutionally
> originate in the Senate, nor could such provisions be
> ingrafted, by way of amendment, in the Senate upon any
> House bill which did not provide for raising – the that is,
> collecting – revenue. This bill did not provide that the
> duty on tea and coffee should be laid at a less rate than
> formerly, but it provided simply that hereafter no revenue

---

[12]     Plaintiffs address germaneness separately in Section II.C.3, *infra.*

41

> should be raised or collected upon tea or coffee. To say
> that a bill which provides that no revenue shall be raised
> is a bill "for raising revenue" is simply a contradiction of
> terms.

*Id.* (*quoting* S. REP. NO. 42-146 (1872)). The Senate report explains that, had the bill merely reduced the tea and coffee rates or even continued them while raising or lowering the rates for other articles, "it would have been a bill for 'raising revenue.'" S. REP. NO. 42-146, at 5. Because the bill "proposed no such thing" and "did not provide for raising *any* revenue," the report concluded that "it is therefore incorrect to call it a bill 'for raising revenue.'" *Id.* at 6 (emphasis in original). Plaintiffs respectfully submit that the Senate report correctly analyzes the Origination Clause's contours with respect to bills that do not raise any revenue and instead terminate taxes on something or someone.

Indeed, targeted tax exemptions like SMHOTA's benefits to military personnel can achieve non-revenue purposes. This "willingness ... to sink money" into valuable government programs – here, national defense and foreign policy – is not indicative of a "bill for raising revenue" under the Origination Clause. *See U.S. v. Norton,* 91 U.S. 566, 567-68 (1875). Instead, such targeted tax exemptions can be considered "tax expenditures," a form of spending. *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 859 (1995) (Thomas, J., concurring); *see* 2 U.S.C. §639(c)(2)-(3) (distinguishing revenues from tax expenditures). As government *spending,* targeted tax exemptions are not *revenue* bills.

### b.    SMHOTA Did Not Raise Revenue

With that background, none of SMHOTA's six sections raised revenue within the Origination Clause's meaning.

1.    SMHOTA §1 merely provided the bill's short title.

2.    SMHOTA §§2-3 modified the first-time homebuyers' tax credit by waiving recapture of the credit for members of the armed forces ordered to extended duty service overseas. In the absence of this waiver, first-time homebuyers who sold their homes soon after claiming the credit would lose the credit. *See* 26 U.S.C. §36(a), (f). These provisions not only *lowered* revenues but also zeroed out taxes for the affected sources of income. As such, these sections did not raise revenue.

3.    SMHOTA §4 expanded exclusions from income for fringe benefits that are "qualified military base realignment and closure fringe" under 26 U.S.C. §132, which does not raise revenue for the same reason that SMHOTA §§2-3 do not raise revenue.

4.    SMHOTA §5 increased filing penalties by $21 (from $89 to $110) for failing to file certain returns. Such penalties do not "levy taxes in the strict sense of the word" required to trigger the Origination Clause. *Nebeker,* 167 U.S. at 202; *U.S. v. Herrada,* 887 F.2d 524, 527 (5th Cir. 1989). If this minor penalty enhancement qualifies as "raising revenues" under the Origination Clause, that

would invalidate numerous Senate-initiated bills that assess penalties.

    5.    SMHOTA §6 amended the Corporate Estimated Tax Shift Act of 2009, Pub. L. 111-42, tit. II, §202(b), 123 Stat. 1963, 1964 (2009), to increase the amount of *estimated* tax that certain corporations pay. But "[w]ithholding and estimated tax remittances are not taxes in their own right, but methods for collecting the income tax." *Baral v. U.S.,* 528 U.S. 431, 436 (2000). Because estimated-tax payments are not "revenue," §6 cannot make H.R. 3590 a revenue bill.

    In summary, as it passed the House, H.R. 3590 was not a revenue bill. "Any and all violations of constitutional requirements vitiate a statute," even if they represent merely "this kind of careless journey work" in originating a revenue bill in the wrong body. *Hubbard v. Lowe,* 226 F. 135, 140 (S.D.N.Y. 1915), *appeal dismissed* 242 U.S. 654 (1916). The Origination Clause thus prohibited substituting the Senate's revenue-raising PPACA for SMHOTA.

    **3.    Because SMHOTA Did Not "Raise Revenue" under the Origination Clause, this Court Need Not Consider the *Flint* Germaneness Test**

    As indicated, the Origination Clause applies not only to whole bills but also to discrete sections and amendments, *Nebecker,* 167 U.S. at 202-03, subject to a test for germaneness. *Flint,* 220 U.S. at 142-43 (Origination Clause allows Senate "amendment … germane to the subject-matter of the [House] bill and not beyond

the power of the Senate to propose"), *abrogated in part on other grounds, Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 540-43 (1985). Under *Flint,* the "Senate may propose any amendment 'germane to the subject-matter of the [House] bill.'" *Moore v. U.S. House of Representatives,* 733 F.2d 946, 949 n.8 (D.C. Cir. 1984), *abrogated in part on other grounds, Raines v. Byrd,* 521 U.S. 811 (1997). Unlike PPACA and the House and Senate bills in *Flint,* SMHOTA was in no way a "general bill for the collection of revenue." *Flint,* 220 U.S. at 142-43. In any event, no part of SMHOTA raised revenue within the meaning of the Origination Clause, *see* Section II.C.2.b, *supra,* which obviates this Court's reviewing PPACA's germaneness to SMHOTA.[13]

## III.   THE PECOS CHANGES ARE UNLAWFUL

Although the APA exempts matters "relating to … grants, benefits, or contracts," 5 U.S.C. §553(a)(2), HHS committed itself to following notice-and-comment rulemaking for such matters. *Nat'l Welfare Rights Org'n v. Mathews,* 533 F.2d 637, 646 (D.C. Cir. 1976) (*citing* 36 Fed. Reg. 2532 (1971)). Thus, to the extent that the challenged actions qualify as substantive rules and do not qualify for any APA exemptions, the failure to follow notice-and-comment rulemaking

---

[13]     To the extent that the Administration argues any specific SMHOTA section "raised revenue," Plaintiffs reserve the right to demonstrate that PPACA's broad regulation of one sixth of the national economy was not germane to that narrow SMHOTA section.

renders the challenged actions null and void. Moreover, as explained in Section III.A, *supra,* the District Court and HHS are simply wrong about §1395a(b)'s requiring compliance with §1395a(b)'s opt-out process, and that error undercuts the District Court's and HHS's analysis of the APA procedural requirements.

### A.    Plaintiffs Have Standing for Count IV

The District Court found Plaintiffs to lack standing because certain HHS actions that Plaintiffs did not challenge allegedly cause the same injuries that the challenged HHS actions cause, so the requested relief against CR6417/6421 and the IFC would be insufficient to redress Plaintiffs' injuries. JA __. At a surface level, the District Court's reasoning is flawed. Absent the challenged actions, the PECOS changes would never take effect, which is the status-quo redress that Plaintiffs seek. Beneath the surface, the District Court's reasoning is even more misguided.

Most basically, the District Court's analysis improperly viewed standing from HHS's merits views, not (as required) *from Plaintiffs' merits views. Waukesha,* 320 F.3d at 235. In ignoring Plaintiffs' requested relief that "[n]on-Medicare providers lawfully may see Medicare-eligible patients and charge those patients a fee that is lawful under applicable state laws, without complying with [§1395a(b)'s] safe harbor, and Medicare imposes no obligations on such providers beyond any applicable requirements of state law," Compl. ¶118.A(xi), the District

Court erred in concluding that Plaintiffs sought relief against only the IFC and CR6417/6421. This overlooked extra relief cures any redressability problem.

In any event, the District Court (like the Administration) is substantively wrong about §1395a(b). Medicare does not require state-licensed physicians to subject themselves to §1395a(b)'s opt-out provisions before treating Medicare-eligible patients. Spending Clause legislation like Medicare operates as a contract, in which recipients and beneficiaries agree to the federal terms as conditions of federal funds or benefits. *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.,* 547 U.S. 47, 59 (2006) ("*FAIR*"). But recipients and beneficiaries remain free to forgo the federal funds and the federal conditions. *Id.* Indeed, plaintiff AAPS preclusively established that principle in *Ass'n of Am. Physicians & Surgeons v. Weinberger,* 395 F.Supp. 125, 140 (N.D. Ill.), *aff'd* 423 U.S. 975 (1975).[14] Preclusion aside, this principle – reaffirmed in *FAIR* – is incontrovertible. While physicians who follow §1395a(b)'s opt-out procedures have the valuable benefit of *HHS's* recognizing that those physicians may treat Medicare-eligible patients outside Medicare (albeit in accordance with §1395a(b)), Medicare does not and cannot require state-licensed physicians who decline to participate to file *anything*

---

[14]     This prior AAPS litigation upheld the Medicare program as "a voluntary one in which a physician may freely choose whether or not to participate," such that physicians "must then comply with [Medicare] requirements in order to be compensated for [their] services" "should a physician choose to participate." *Weinberger,* 395 F.Supp. at 140.

under Medicare.

To the contrary, courts apply a presumption against preemption in fields like medicine traditionally occupied by the states. *Wyeth v. Levine,* 555 U.S. 555, 565 & n.3 (2009). "Unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance," *U.S. v. Bass*, 404 U.S. 336, 349 (1971), and "absent an expression of legislative will, [courts] are reluctant to infer an intent to amend the Act so as to ignore the thrust of an important decision." *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 128 (1985). Nothing in Medicare requires those who want nothing to do with Medicare to comply with §1395a(b).

### B.    <u>Count IV Is Not Moot</u>

Relying on a 2012 rulemaking issued six months before the District Court ruled on their motion to dismiss – that they failed to bring to that court's attention – the Administration belatedly suggests that Count IV is moot. While new rules – if themselves valid – can moot procedural defects in prior agency actions, Plaintiffs respectfully submit that Count IV is not moot for three reasons. First, mootness based on APA-compliant rulemakings is inapposite to *substantive* defects common to the interim and final rules. Second, all incarnations of the PECOS-NPI changes are *ultra vires* without PPACA. Third, the 2012 rule failed to respond to AAPS comments and relies on PPACA elements rendered void by the

48

Origination Clause violation outlined in Section II.C, *supra*. For these reasons, once the 2012 rule is invalidated, the Administration will need to retreat to the procedurally defective actions challenged here.

### C.    The PECOS Changes Are Substantive Rules

Together, CR6417/6421 and the IFC trigger the first three *AMC* criteria and narrow HHS discretion under *General Elec. Co.* In addition, interpretations that change prior interpretations require notice-and-comment rulemaking, *Paralyzed Veterans of Am. v. D.C. Arena L.P.,* 117 F.3d 579, 586 (D.C. Cir. 1997); *Alaska Prof'l Hunters Ass'n v. FAA,* 177 F.3d 1030, 1034 (D.C. Cir. 1999), which even the District Court acknowledges CR6417/6421 to have done in rescinding HHS's prior allowance for these referrals under change request 6093. JA __ n.11. For the foregoing reasons, HHS's changes required a rulemaking.

### D.    APA's Good-Cause Exception Does Not Apply

Contrary to the District Court (JA __), the APA exception where "the agency for good cause finds" that APA procedures "[would be] impracticable, unnecessary, or contrary to the public interest" does not apply. 5 U.S.C. §553(b)(B). First, "it should be clear beyond contradiction or cavil that Congress expected, and the courts have held, that the various exceptions to the notice-and-comment provisions of section 553 will be narrowly construed and only reluctantly countenanced." *State of N.J., Dep't of Envtl. Prot. v. U.S. E.P.A.,* 626 F.2d 1038,

1045-46 (D.C. Cir. 1980); *Mack Trucks, Inc. v. E.P.A.,* 682 F.3d 87, 94 (D.C. Cir. 2012) (same); *see also Northern Arapahoe Tribe v. Hodel,* 808 F.2d 741, 751 (10th Cir. 1987) (*quoting* S.Rep. No. 752, 79th Cong., 1st Sess. 14 (1945)). Second, HHS's purportedly good cause (JA __) fails because HHS vastly understates the rule's impact on physicians and patients due to HHS's misunderstanding §1395a(b), as outlined in Section III.A, *supra.* Finally, the challenged aspects of the IFC and CR6417/6421 are not the type of "exigent circumstances" that fit within the "narrow 'good cause' exception of section 553(b)(B)," such as "emergency situations" or instances where "the very announcement of a proposed rule itself could be expected to precipitate activity by affected parties that would harm the public welfare." *Chamber of Commerce of U.S. v. S.E.C.,* 443 F.3d 890, 908 (D.C. Cir. 2006). In short, the good-cause exception does not apply.

### E.     APA's "Housekeeping" Exception Does Not Apply

Similarly, HHS cannot resort to the APA exception for "rules of agency organization, procedure, or practice." 5 U.S.C. §553(b)(A). When (as here) the agency action determines the availability of a benefit, that exception – which is merely a "housekeeping" measure, *Chrysler Corp.,* 441 U.S. at 310 – does not apply. *AMC,* 995 F.2d at 1112; *Chamber of Commerce of U.S. v. DOL,* 174 F.3d 206, 211 (D.C. Cir. 1999) (exception does not cover rules that alter rights or interests). Moreover, the exception "must be narrowly construed," *U.S. v.*

*Picciotto,* 875 F.2d 345, 347 (D.C. Cir. 1989), and its "distinctive purpose ... is to ensure that agencies retain latitude in organizing their *internal* operations." *Am. Hosp. Ass'n v. Bowen,* 834 F.2d 1037, 1047 (D.C. Cir. 1987) (emphasis added, interior quotations omitted). Indeed, "regardless whether [a rule presents] a new substantive burden," a "change [that] substantively affects the public to a [sufficient] degree" will "implicate the policy interests animating notice-and-comment rulemaking." *Electronic Privacy Info. Ctr v. U.S. Dep't of Homeland Sec.,* 653 F.3d 1, 5-6 (D.C. Cir. 2011). Here again, HHS's misunderstanding of §1395a(b), *see* Section III.A, *supra,* explains the misplaced reliance on this exception. Far from a mere internal procedure, the changes proposed here would impact the rights and privileges of countless physicians and patients.

### F.    PECOS Changes Would Be *Ultra Vires* without PPACA

The PECOS merits question hinges on PPACA's validity because – without PPACA §§6402, 6405(c) – HHS would lack the authority to require referrers to register with HHS. Thus, if Plaintiffs succeed in invaliding PPACA in its entirety, they will at the same time invalidate the PECOS changes substantively because HHS will no longer have authority for the changes.

Specifically, PPACA §6405(c) gave HHS discretionary authority over various services ordered, prescribed, or referred under Medicare. If this Court invalidates PPACA in its entirety, HHS would lack substantive authority for the

relevant actions that PPACA authorized. Accordingly, the next section argues that PPACA is facially invalid as a tax. Significantly, even if PPACA survives (and HHS thus retains whatever substantive authority PPACA provides), HHS still must comply with the APA's procedural requirements.

## IV.    THE POMS CHANGES ARE UNLAWFUL

The District Court made three primary errors on Count I: (1) Plaintiffs have standing to challenge facility-based Medicare provisions because the AAPS membership includes eligible *facilities,* not merely competing *physicians,* Smith Decl. ¶¶3-8; Section I.A.1.b, *supra;* (2) the Administration's jurisdictional §405 argument requires an answer before reaching the merits; and (3) the POMS clearly required a rulemaking, which *Hall* did not resolve. Only the second and third issues require elaboration.

### A.    This Court Has Statutory Subject-Jurisdiction for POMS Issues

The Administration argued that the channeling provisions of 42 U.S.C. §405(g)-(h) deny jurisdiction over claims related to Social Security and Medicare. By their terms, those sections deny federal district courts jurisdiction only under 28 U.S.C. §1331 and §1346 for claims related to Social Security and certain provisions of Medicare. 42 U.S.C. §§405(g)-(h), 1395ii. Plaintiffs offer two responses to these exhaustion barriers: (1) Plaintiffs do not seek resort to §1331 or §1346, and (2) Plaintiffs have no alternate remedy to this action.

First, unlike the plaintiffs in the §405 cases cited by the Administration, Plaintiffs here resort to equity jurisdiction that has always been an alternative to §1331. Because they did not consider the issue, these other cases did not rule out resorting alternate forms of jurisdiction. *Cooper Indus.,* 543 U.S. at 170; *Waters,* 511 U.S. at 678 ("cases cannot be read as foreclosing an argument that they never dealt with"). Indeed, "[t]he Supreme Court has four times explicitly reserved judgment on th[e] question" of whether 28 U.S.C. §1361 provides a jurisdictional alternative to §1331, *Ganem,* 746 F.2d at 850, and this Circuit has found this equity jurisdiction an available alternative to §1331. *Id.* Accordingly, Plaintiffs respectfully submit that 42 U.S.C. §§405(g)-(h), 1395ii are simply inapposite to the District Court's alternate equity jurisdiction.

Second, Plaintiffs allege that the challenged actions put their members on an unlawfully unequal footing vis-à-vis PPACA-favored competitors. Smith Decl. ¶¶7-8, 10; Compl. ¶20. For that reason, Plaintiffs will never get the customers they seek, so they cannot avail themselves of the indirect path through Medicare's channeling provisions envisioned by *Am. Chiropractic Ass'n v. Leavitt,* 431 F.3d 812, 816-18 (D.C. Cir. 2005). Under *Shalala v. Illinois Council on Long Term Care,* 529 U.S. 1, 19 (2000), Plaintiffs can challenge these Medicare policies because the alternative is "no review at all."

Where it applies, prudential exhaustion serves three functions: (1) allowing

agencies the opportunity to correct their errors, (2) affording parties and courts the benefits of the agency's expertise, and (3) compiling an administrative record adequate for judicial review. *Avocados Plus Inc. v. Veneman,* 370 F.3d 1243, 1247 (D.C. Cir. 2004). Plaintiffs respectfully submit that (1) far from conceding possible error, the Administration opposes Plaintiffs' position on the merits, making exhaustion futile, *McCarthy v. Madigan,* 503 U.S. 140, 148 (1992) (quoting *Houghton v. Shafer,* 392 U.S. 639, 640 (1968)); (2) the Administration has no expertise on the scope of constitutional limits over the reach of Spending-Clause legislation like Medicare and the need to engage in notice-and-comment rulemaking under the APA; and (3) the agency actions themselves constitute the entire administrative record, given that the Administration failed to convene the required rulemakings and deny that they needed to convene them. Under the circumstances, prudential exhaustion would serve no purpose.

### B.      This Court Reverse the POMS Merits

While implausible, the Administration's argument that the POMS merely interpret the statute would be more plausible if HHS issued a free-standing interpretation, rather than amending prior interpretations. Amending interpretations requires a rulemaking, which means the "agency process for formulating, amending, or repealing a rule." 5 U.S.C. §551(5); *see* section III.C, *supra.*

Significantly, the Social Security Act provides several mechanisms for

terminating Social Security benefits, 42 U.S.C. §402(n), (t), (u)-(v), (x)-(y), none of which include (as the POMS do) the requirement *to repay* past benefits received. Significantly, the *AMC* test for substantive rules includes the inquiry "whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties." *AMC,* 995 F.2d at 1112. Here, it seems clear that the POMS invented a duty where none existed in the statute or the prior POMS. As a matter of *procedural* law, that act of invention requires notice-and-comment rulemaking to sustain it. (As a matter of *substantive* law, the obligation to pay back past benefits appears wholly *ultra vires.*)

The Administration suggested below that Medicare Part A eligibility is "harmless," but as indicated in Section III.A, *supra,* it appears that Part A eligibility seriously erodes the freedom of choice available to the Medicare-eligible patient, given the Medicare strings attached to mere eligibility. Dr. Smith's non-Medicare facility in Oklahoma draws patients – actually, escapees – from Canada's national health service. Smith Decl. ¶5. If Part A eligibility indeed were harmless, Plaintiffs and the Administration may have no dispute. *Moore v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 47, 47-48 (1971). But Plaintiffs do not understand the Administration to share their position – namely, that a patient's Medicare Part A eligibility does not prevent non-Medicare physicians or facilities

seeing that patient, wholly outside of Medicare. In its misguided effort to help, the Administration appears to have a more harmful definition of "harmless" in mind.

## V. THE ACCOUNTINGS FOR SOCIAL SECURITY AND MEDICARE ARE JUSTICIABLE

Plaintiffs allege that the Administration – and particularly the trustees of the Medicare and Social Security trust funds – have misrepresented PPACA's economic impacts and affordability at the same time that have violated their fiduciary duties with respect to the Medicare (Count V) and Social Security (Count VI) trust funds. Compl. ¶¶106-117. Although the District Court dismissed these as generalized grievances insufficient to support standing, JA __, Plaintiffs have standing for three reasons: (1) Plaintiffs' members obviously have a financial interest in the solvency of the programs that provide benefits to them. *See* Section I.A.1.c, *supra;* (2) Plaintiffs' physician members have an interest in the solvency of Medicare on behalf of Medicare-eligible patients, *e.g.,* Hammons Decl. ¶5-7, even if those physicians do not themselves use Medicare; and (3) the fact that grievances fall on the public widely does not deny standing to the entire public. *Akins,* 524 U.S. at 23. Dismissal of the accounting Counts must be reversed.

## VI. THIS ACTION SHOULD BE REMANDED TO JUDGE COLLYER

When they filed their complaint, Plaintiffs designated this case as related to *Hall* because the two cases "share common issues of fact" and "grow out of the same event or transaction" under LCvR 40.5(a)(3)(ii)-(iii). The Administration

disputed the only second criterion, arguing that (1) administrative-record cases and procedural claims are purely legal, and (2) the phrase "issue of fact" means "a point supported by one party's evidence and controverted by another's." JA __. Without opinion, the case was transferred from Judge Collyer to Judge Leon, who later transferred the case to Judge Jackson.

This case relates to *Hall* for two reasons and should not have been transferred to Judge Leon for later transfer to Judge Jackson:

- First, the cases are clearly related under LCvR 40.5(a)(3)(ii)-(iii); indeed, the Administration waived opposition the third criterion by not even disputing it. *Stephenson v. Cox,* 223 F. Supp. 2d 119, 121 (D.D.C. 2002); *FDIC v. Bender,* 127 F.3d 58, 67-68 (D.C. Cir. 1997).

- Second, the District Court's preference for random assignment lives in nonbinding District Court decisions that cannot amend the unambiguous rules: "Federal law … requires a district court to follow certain procedures to adopt or amend a local rule." *Hollingsworth v. Perry,* 558 U.S. 183, 191 (2010) (interior citations and quotations omitted).

If there is a remand, this Court should reverse the case-transfer orders and remand to Judge Collyer. 28 U.S.C. §2106. The District Court remains free to change its rules, but it cannot change them *sub silentio* or by interpretation.

## A.    Nothing Requires or Commends Random Assignment

When a case qualifies as "related" under Rule 40.5, the random-assignment provisions simply do not apply: "*[e]xcept as otherwise provided by these Rules,* civil … cases shall be assigned to judges of this court selected at random." LCvR 40.3(a) (emphasis added). Accordingly, random assignment is irrelevant to cases that meet Rule 40.5's criteria. There is no free-floating, due-process preference for random assignment. *Francolino v. Kuhlman,* 365 F.3d 137, 141 (2d Cir. 2004); *U.S. v. Simmons,* 476 F.2d 33, 35 (9th Cir. 1973).[15] If the District Court prefers random assignment in cases like this, *Hollingsworth* requires amending the rules.

## B.    This Case and *Hall* Share Common Issues of Fact

The Administration's three arguments against factual relatedness lack merit. As interesting as that may be, the Court need not resolve it because this action and *Hall* grew out of the same event or transaction. *See* Section VI.C, *infra.*

First, an administrative record plainly contains facts. *DSE, Inc. v. U.S.,* 169 F.3d 21, 30 (D.C. Cir 1999) (discussing "material facts contained in the administrative record"); *Smoke v. Norton,* 252 F.3d 468, 471 (D.C. Cir. 2001);

---

[15]    In any event, the Fifth Amendment does not protect federal defendants. *U.S. v. United Mine Workers of America,* 330 U.S. 258, 275 (1947) ("common usage [of] th[e] term ["person"] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so"); *cf.* FED. R. CIV. P. 25(d) (allowing automatic substitution of official-capacity officer defendants). There is no "person" on the other side.

*James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1096 (D.C. Cir. 1996) ("these facts are usually established by the administrative record"); *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376-77 (1989).

Second, the purely legal nature of applying law to uncontested record facts has nothing to do with whether the record contains facts. *Better Government Ass'n v. Department of State,* 780 F.2d 86, 92 (D.C. Cir 1986) (uncontested record facts "present[] purely legal questions, the understanding of which neither requires nor is facilitated by *further* factual development") (emphasis added).

Third, "issues of fact" does not mean "*disputed* factual issues;" it means "factual issues" or just "facts." The "full name is merely … a form of redundancy in which lawyers delight, as in 'cease and desist' and 'free and clear'" that "adds nothing" to the phrase's meaning. *In re Ocwen Loan Serv., LLC Mortg. Servicing Litig.,* 491 F.3d 638, 646 (7th Cir. 2007). Any contrary reading would create redundancy whenever courts or rules address "disputed issues of fact." *See, e.g., Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 143 (1997); *Irizarry v. U.S.,* 553 U.S. 708, 711 (2008); 6A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE Civ. §1529 (2d ed. 1990 & Supp. 2013); LCrR 32.2(d).

## C. This Case and *Hall* Grow Out of the Same Event or Transaction

This action and *Hall* grow out of the Administration's issuance of the POMS without following the APA. Moreover, the POMS-based claims and *Hall* do not

merely grow out of the same event or transaction; they address the *same subject matter.* By meeting Rule 40.5(a)(4)'s more rigorous subject-matter criterion, this case and *Hall* are even more related than Rule 40.5(a)(3) requires. *Collins,* 126 F.R.D. at 8. That undeniable relationship explains the Administration's ignoring this dispositive issue.

Had Plaintiffs challenged only the POMS, the Administration could not credibly have challenged relatedness with *Hall.* Adding the PPACA claims does not change the analysis because (1) the addition of PPACA claims is not germane to Rule 40.5, and (2) Plaintiffs did not need to *consolidate* the PPACA and POMS claims, which Plaintiffs permissibly filed together. FED. R. CIV. P. 18(a).

## CONCLUSION

This Court should reverse the dismissal of each count and remand to Judge Collyer for further proceedings.

Dated: June 21, 2013                    Respectfully submitted,


                                        /s/ Lawrence J. Joseph
                                        _____
                                        Lawrence J. Joseph, DC Bar #464777
                                        1250 Connecticut Ave., NW Suite 200
                                        Washington, DC 20036
                                        Telephone: (202) 355-9452
                                        Facsimile: (202) 318-2254
                                        Email: ljoseph@larryjoseph.com

                                        *Counsel for Appellants Association of*
                                        *American Physicians & Surgeons and*
                                        *Alliance for Natural Health USA*

60

## <u>BRIEF FORM CERTIFICATE</u>

Pursuant to Rule 32(a) of the FEDERAL RULES OF APPELLATE PROCEDURE, I certify that the attached Appellants' Opening Brief is proportionately spaced, has a typeface of Times New Roman, 14 points, and contains 13,997 words, including footnotes, but excluding this Brief Form Certificate, the Statement with Respect to Parties and *Amici,* the Table of Authorities, the Table of Contents, the Glossary, the Addendum, and the Certificate of Service. I have relied on Microsoft Word 2010's word calculation feature for the calculation.

Dated: June 21, 2013                    Respectfully submitted,


                                        ___/s/ Lawrence J. Joseph_____
                                        Lawrence J. Joseph

                                        1250 Connecticut Ave., NW
                                                Suite 200
                                        Washington, DC 20036
                                        Telephone: (202) 355-9452
                                        Telecopier: (202) 318-2254
                                        Email: ljoseph@larryjoseph.com

                                        *Counsel for Appellants Association of*
                                        *American Physicians & Surgeons and*
                                        *Alliance for Natural Health USA*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of June 2013, I have caused the foregoing document, together with its addendum, to be served on the following counsel via the Court's CM/ECF System:

Dana Kaersvang
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm 7533
Washington, D.C. 20530
Tel: 202-307-1294
Email: Dana.L.Kaersvang@usdoj.gov


/s/ Lawrence J. Joseph
_____
Lawrence J. Joseph